# IN RE ISHERWOOD.

---

PATENTS; PATENTABILITY; DIVISION; CLAIMS; ESTOPPEL.

1. Under rule 42 of the Patent Office requiring an inventor, where he claims several inventions in a single application, and the inventions are of such a nature that a single patent may not issue to cover them, to limit his pending application to whichever invention he may elect, division may be required where the structures are unrelated or where the claims relate only to species under a general genus.

2. Where after division of an original application for a patent for an improvement in the construction of the hulls of seagoing vessels, which contained generic claims to both the continuous and intercostal systems of constructing the beams or frames at points of intersection of transverse and longitudinal members, and also specific claims to each, a patent was issued to the applicant which protected

him in both methods of construction, it was *held* that a subsequent application by the same applicant was properly rejected, in the light of the patent and to avoid double patenting, where it claimed the intercostal method of construction; and a contention by the applicant was untenable which was to the effect that the Examiner must have found in advance, as a basis of requiring a division, that the two methods of construction were both patentable, and that, therefore, he was estopped when later confronted with the respective applications to hold the intercostal method unpatentable in view of the prior art and the claims upon which the other was patented.

No. 1084.  Patent Appeals.  Submitted May 14, 1917.  Decided June 2, 1917.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for a patent.    *Affirmed.*

The facts are stated in the opinion.

*Mr. E. C. Brown* and *Mr. T. A. Witherspoon* for the appellant.

*Mr. T. A. Hostetler* and *Mr. Wm. R. Ballard* for the Commissioner of Patents.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This appeal is from the decision of the Commissioner of Patents refusing a patent to appellant, Joseph William Isherwood, for an improvement in the construction of seagoing vessels.

Twelve claims were rejected, of which the first is illustrative:
"1. A vessel in its main body portion provided with consecutive transverse frames individually a plurality of times stronger and spaced a plurality of times farther apart than has heretofore been customary in the same class of vessel, said frames extending to the shell or deck plating of the vessel, said vessel being also provided in said portion thereof with intercostal longitudinal frames which, as compared with the transverse frames, are individually weak and very closely spaced, and which also

extend to the shell or deck plating of the vessel, substantially as described."

The invention is described by the Examiner as follows: "Generally stated, the structure involves a hull construction for seagoing vessels with the object of combining lightness of construction with great strength and resistance to tendencies to longitudinal buckling, to which vessels are subjected in a seaway, and with the further object of saving the amount of structural metal employed and a consequent reduction in expense and cost of labor. These objects are effected by increasing the size of the transverse frames and deck beams, and consequently their strength, so that they may be spaced a greater distance apart than is customary in the same class of vessels and in attaching the hull and deck plating directly to the said frames and beams; and in further providing a greater number of smaller longitudinal frames and deck beams with their outer surface flush with the outer surfaces of the transverse frames and beams so that the hull and deck plating can be attached directly thereto. To make the outer surfaces and longitudinal frames flush with each other necessitates the crossing of the intersecting beams, and involves one of two methods. One is to cut one set of beams or frames at the intersections and unite by brackets or angle irons, etc., which is common and known in the ship-building art as the intercostal system. The other, when it is desired to have both sets of frames continuous, is to notch the large frames or beams and fit the smaller ones in the notches at the intersections."

The original application contained generic claims to both the continuous and intercostal structure, and specific claims to each. The Examiner required division, which was done, and a patent granted on the divisional application. The present claims were rejected in the light of the patent to avoid double patenting. Division was required under rule 42 of the Rules of Practice in the Patent Office, which is as follows: "If several inventions, claimed in a single application, be of such a nature that a single patent may not be issued to cover them, the inventor will be required to limit the description, drawing, and claim of the pending application to whichever invention he may elect. The

other inventions may be made the subjects of separate applications, which must conform to the rules applicable to original applications.  If the independence of the inventions be clear, such limitation will be made before any action upon the merits; otherwise it may be made at any time before final action thereon, in the discretion of the Examiner."

Under this rule division may be required either where the structures are unrelated or where the claims relate only to species under a general genus.  It is a division between species with which we are here concerned.  Appellant contends that the Commissioner is required to grant a patent upon each species of the generic idea embraced within the original application.  Undoubtedly, when the Examiner required division, he was of the opinion that the claims of the patent and those of the present case were distinct and separately patentable.  But it has since been found that the modification here presented has been included in appellant's patent.  It is, therefore, difficult to understand wherein he has been injured.

Appellant, in his patent, was granted, among others, the following claims:

"1. A vessel in its main body portion provided with consecutive transverse frames individually a plurality of times stronger and spaced a plurality of times farther apart than has heretofore been customary in the same class of vessel, said frames extending to the shell or deck plating of the vessel, said vessel being also provided in said portion thereof with longitudinal frames which, as compared with the transverse frames, are individually weak and very closely spaced, and which also extend to the shell or deck plating of the vessel, substantially as described."

"6. A vessel in its main body portion provided with consecutive transverse frames, some of which are provided with slots, individually a plurality of times stronger and spaced a plurality of times farther apart than has heretofore been customary in the same class of vessel; said frames extending to the shell or deck plating of the vessel; said vessel being also provided in said portion thereof with longitudinal frames; some of which pass through said slots; and which longitudinal frames, as compared

with the transverse frames, are individually weak in cross section and very closely spaced, which also extend to the shell or deck plating of the vessel; said frames and connections constituting a framework of a less total weight than has been heretofore customary in the framework of the same class of vessel, substantially as described."

Obviously two methods are available for constructing frames with both the transverse and longitudinal members extending to the shell or deck plating of the vessel. It could be constructed either by notching the transverse frames to admit the passage of the longitudinal members without necessitating the cutting of the latter, or by cutting the longitudinal members to fit between the transverse members and thereby obviate the necessity of notching. It will be observed that claim 1 of the patent is not limited to the manner in which the longitudinal and transverse members may pass each other. It may be accomplished in either of the above ways. On the other hand, claim 6 of appellant's patent is limited to the notching of the transverse members to admit the passage of the longitudinal members. As stated in the opinion of the Board of Examiners in Chief: "This claim was presumably allowed upon the ground that in choosing this construction, when carrying the invention of claim 1 of the patent into practical effect, unexpected economy is obtained over that which is obtained when the other one of the two obviously possible constructions is adopted." In other words, appellant in claim 1 and other claims of his patent is protected in his construction, regardless of the specific form of construction used at the intersection of the transverse and longitudinal members. In claim 6 and other like claims of the patent he is specifically protected in advantages to be derived from the notched transverse frames and continuous longitudinals. The present claims, therefore, involv merely the substitution of the well-known intercostal system for the method specifically covered in the patent, which does not involve invention.

In this view of the case, we agree with the tribunals below that appellant has been accorded all the protection in his patent to which he is entitled. Whatever may have been the view of

the Examiner in requiring division, the duty of determining the right of appellant to a patent in the present case is clear. The patentability of the present claims may be decided on appellant's patent by the same rules which would be applied to test their anticipation by a patent to another. It is useless to insist that the Examiner must have found in advance, as basis for requiring division, that the longitudinal frame construction and the intercostal frame construction were both patentable; for, assuming that he did, he is not estopped when later confronted with the respective applications to hold the one unpatentable in view of the prior art and the claims upon which the other was patented.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.

*Affirmed.*

Mr. Justice STAFFORD, of the Supreme Court of the District of Columbia, sat with the Court in the hearing and determination of this appeal in the place of Mr. Chief Justice SHEPARD.