## In re PEILER. *
### Patent Appeal No. 2651.

Court of Customs and Patent Appeals.
March 31, 1931.

Vernon M. Dorsey, of Washington, D. C. (S. F. Parham, of Washington, D. C., and L. G. Bates, of Hartford, Conn., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

Appellant has taken out a series of patents on glass-feeding mechanism and process-

*Rehearing denied May 27, 1931. · , . . ·

es. On May 5, 1919, he filed his application, serial No. 294,792, with claims for device and processes, and this application afterwards went to patent on January 3, 1928, as patent No. 1,655,391. The application here in issue is a division of said application, and was filed April 9, 1926. On November 25, 1925, the appellant filed an application for patent on improvements in the same device and processes, which afterward went to patent on February 16, 1926, as patent No. 1,573,742. The divisional application now before the court involves a cam mechanism governing the rise and fall of the impelling implement which controls the discharge of the glass, and which cam mechanism is adjustable while the impelling implement and other mechanism is in operation.

The Examiner and Board of Appeals rejected certain of the claims of appellant. Appeal was taken from this action, but in this court some of the rejected claims are abandoned, so that we have for consideration only rejected claims 1 to 6, inclusive, 8, 15, and 16. Claim 1 is fairly typical of said claims, and is here given:

"1. The combination with apparatus for feeding molten glass, including a container having a submerged outlet for discharging the glass, of an implement movable in adhesive contact with glass in the container toward and from the outlet, a cam for reciprocating the implement to cause periodic application of accelerating and retarding impulses to the glass in the outlet, and means for varying the contour of the contact surface of the cam while the cam is rotating."

The Board of Appeals rejected these claims on reference to appellant's patents heretofore cited, on the general ground that to issue a patent to appellant on this application would result in double patenting; the invention in issue being held to be fully covered by appellant's disclosure and claims in said patent No. 1,573,742. The appellant contends that, under the Patent Office practice at the time the application which ripened into said patent No. 1,573,742 was being prosecuted, he could not claim for the specific invention herein claimed upon; that in said application, in his specification and drawings, he disclosed several alternative forms of application of his invention, and that, while said specification and drawings showed the cam mechanism here in question, his claims were drawn therein on a form of the mechanism which did not show such mechanism; that he could not, under said practice, claim for both, and is therefore entitled here to claim a patent on the specific device which he could not claim there.

As opposed to this view, the Solicitor of the Patent Office argues that the specification and drawings of appellant in the application in said 1,573,742 disclosed the identical device here claimed upon, and that the claims therein fully covered it. It is also argued that, inasmuch as appellant, in said application, showed alternative devices, with claims covering all, the patent should be construed as covering the most specific showing therein. In this connection the Solicitor calls attention to the statement of the Examiner:

"It is well settled, it seems, that where a patent discloses several species of an invention and contains claims specific to one of these species, the species on which the specific claims of the patent are based cannot form the patentable subject matter of the claims of another patent."

The Board of Appeals has this to say on the subject:

"It is also contended that the specific claims of No. 1,573,742 are drawn to the "paddle-needle" feeder disclosed in Figs. 1 to 11, inclusive, and the rejected claims to the needle feeder of Figs. 12 to 19, inclusive, so that the rejected claims could not be made in the patent. The paddle and its operating devices are entirely separate and distinct from the needle operating devices in Figs. 1 to 11, inclusive, and there is no claim in the patent which is specific to the operating devices of the needle mechanism of this modification. The fact that there are claims specific to the paddle operating devices would not preclude the allowance of claims to the needle or plunger operating mechanism of either claims 1 to 11, inclusive, or claims 12 to 19, inclusive, and there is a claim generic to both of them (see claim 35). Of the rejected claims, claims 1 to 6, inclusive and 8 are limited to adjustment of one lobe of the cam relative to the other while the cam is rotating, as disclosed in Figs. 12 to 19, inclusive, of the patent and involved in claims 10 and 35 of the same. Claims 7 and 11 to 14, inclusive, are not so limited and would read on the form shown in Figs. 1 to 11, inclusive.

"Claims 19 and 25 of the patent involve variation of the length of the feed period without varying the frequency of the severing operation and this is just what the rejected claims cover.

"To state the matter briefly, our conclusion is that the construction whereby the cam devices for operating the impeller are ad-

justed for the purpose of varying the up and down strokes is not a different invention from the phase changing operation between the impeller operating devices and the severing means which results therefrom, as covered by claims 19, 22, 25 and 35 of patent No. 1,573,742.

"There is no reason why the rejected claims could not have been made in the patent and we see no proper line of division between these claims and those of the patent.

The device in question here is used in drawing molten glass from a container, and consists of an impeller or plunger which is caused to accelerate the flow of the molten glass and expel it in charges of a certain size and form into the molds at the will of the operator. The particular feature here involved is a cam with a plurality of parts, which raises and lowers the impeller. The construction of the cam is as follows: Two sleeves, freely rotatable on a shaft, have bevel gears on their outer extremities. The inner extremities thereof have flanges, which constitute a part of the cam. To these flanges are bolted cam lobes, one to the flange of the right sleeve and one to the flange of the left. These constitute the cam for raising and lowering the impeller. Each sleeve is caused to rotate in the same direction by bevel gears placed between the bevel gears on the outer extremities of said sleeves and other bevel gears fixed immovably upon the rotating shaft. The operator may, while the mechanism is operating, by means of a handle, connected with a worm gear which engages a movable, cogged sector, turn the small interconnecting beveled cogwheel one way or the other, and thus move the portion of the cam attached to that particular sleeve. Both sleeves have such adjustable means. Thus the operator can regulate the stroke of the impeller while the machine is in operation, at will.

The precise device in question is fully described in appellant's specification, on pages 6 and 7, and is shown in said patent No. 1,573,742. The Solicitor for the Patent Office contends that claims 28 and 29 of said patent fully cover the device here sought to be patented. Said claims are as follows:

"28. In apparatus for separating molten glass into mold charges, the combination of a container for the glass having a submerged discharge outlet, a vertically movable implement projecting downwardly into the glass in working alignment with the outlet, shears adapted to close beneath the outlet to sever

mold charges suspended therebeneath, and means for closing the shears periodically and reciprocating the implement vertically in timed relation to the shear operation, said means being adapted to permit adjustment of said timed relation while maintaining uniform reciprocations of the implement.

"29. In apparatus for separating molten glass into mold charges the combination of a container for the glass having a discharge outlet, periodically operable means for timing the formation and suspension of successive gathers of glass beneath said outlet, severing means operating periodically, in timed relation to said timing means, to sever a mold charge from each suspended gather, and means, operable during the continued operation of the apparatus, for altering the said timed relation between the said severing and timing means."

Appellant invokes the rule that he may have separate valid patents as he makes patentable inventions, and that he has the option to secure all of these inventions, if they be related, by a single patent or by many patents. He further argues that the fact that he has described this patent device in a former application does not preclude him from having a patent upon the same now, so long as he did not claim the same in his application which ripened into said patent. In support of this contention, he cites Century Elec. Co. v. Westinghouse Elec. Co. (C. C. A.) 191 F. 350; Wirebounds Patents Co. v. Saranac, etc. (C. C. A.) 37 F.(2d) 830; Traitel Marble Co. v. Hungerford Brass & Copper Co. (C. C. A.) 22 F.(2d) 259; and Thomson-Houston Elec. Co. v. Ohio Brass Co. (C. C. A.) 80 F. 712, 729.

This is the law, and the appellant's rights here must be measured by it. If he has disclosed, but not claimed, the particular invention here in question in his patent, he can claim it now. However, we are in agreement with the Solicitor of the Patent Office in his construction of claims 28 and 29 of said patent No. 1,573,742. In claim 28, for instance, "means for * * * reciprocating the implement vertically in timed relation to the shear operation, said means being adapted to permit adjustment of said timed relation while maintaining uniform reciprocations of the implement," is another way of stating what appellant has stated in his rejected claims wherein he recites, "means for varying the contour of the contact surface of the cam while the cam is rotating." The essential feature is the means for controlling

the impeller mechanism while it is in motion. This element, in our opinion, was not only fully disclosed in the specification and drawings of appellant's patent No. 1,573,742, but was claimed therein in said claims 28 and 29. Hence to grant his application here on the rejected claims would be to give him another patent upon a device already patented, and would operate to prolong his monopoly beyond the period which the Legislature provided he might have.

The decision of the Board of Appeals is affirmed.

Affirmed.