## In re SLEPIAN.
## Patent Appeal No. 2727.

Court of Customs and Patent Appeals.
May 25, 1931.

Wesley G. Carr, of East Pittsburgh, Pa. (Frederick W. Lyle, of Williamsburg, Pa., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This proceeding involves five claims, Nos. 22 to 26, inclusive, contained in an application filed by Slepian January 5, 1921, for alleged new and useful improvements in thermionic amplifying devices. Seven claims of the application were allowed by the United States Patent Office. Those at issue were rejected by the Examiner, whose decision was affirmed by the Board of Appeals of the United States Patent Office, and from the decision of the latter the appeal comes to this court.

The claims are divisible into two classes, Nos. 22 and 23 comprising one group, and Nos. 24, 25, and 26 the other. Nos. 22 and 24 are quoted as representative of these respective groups:

"22. In combination with a source of electro-motive force and a work circuit adapted to utilize a relatively large current, a pair of electrodes connected in said work circuit, a source capable of emanating electrons at a rate which is small relative to that necessary to supply said current, means to cause electrons from said source to impinge upon that portion of one of said electrodes which faces said other electrode, and means to vary the number of said electrons impinging upon said one electrode per second."

"24. In combination with an output circuit having a pair of electrodes connected thereto, a source of light, a photo-electric subtance, means to cause electrons emanating from said substance to impinge upon one of said electrodes, and means to vary the number of said electrons so impinging per second."

The references are: Langmuir, 1282439, Oct. 22, 1918; Slepian, 1450265, April 3, 1923.

From the decision of the Board of Appeals, we quote the following description of the device and its operation:

"The claims are drawn to a work circuit including a thermionic amplifier. In the form of the device shown in the drawings the amplifier is provided with a cathode, an anode and a control grid and in addition to these three electrodes it is provided with a

potassium electrode which constitutes the source of primary electrons. The latter electrode is photo-electrically active and when subjected to the rays of a lamp emits primary electrons which travel toward the anode. Due to the presence of a magnetic field, however, they are diverted and strike that face of the cathode which is located toward the anode. The small number of high velocity primary electrons striking the cathode causes the emission therefrom of a large number of secondary electrons which pass to the anode. This large number of electrons permits a relatively high current value to flow through the output circuit connected to the tube."

It was the view of the tribunals of the Patent Office that claims 22 and 23 defined nothing patentable over the subject-matter of certain claims of appellant's patent of April 3, 1923, supra. Both tribunals pointed out that the only feature distinguishing the claims is that those of the application, to quote the Examiner, "recite means to vary the number of electrons emitted from the source of primary electrons."

Claims 24 and 25 call for the additional feature of a "source of light" and a "photo-electric substance" constituting the electron source, while claim 26 specifies the further matter of "means to vary the intensity of said light source." These three claims were rejected upon appellant's patent in view of Langmuir.

It is appellant's contention that the claims are for a general combination, and that the features of "(1) a photo-electric metal, and (2) a pair of electrodes arranged for secondary emission amplification," are elements, the combination of which forms what he refers to as the "vital combination." In other words, as we understand it, appellant insists that these two features combined, themselves, form a specific combination, which is a part of the general or larger combination; that these particular features were not included in the claims of the patent which were themselves combination claims, and that he is entitled now to include them and secure a patent on the new combination. He would thus have a combination within a combination, or a subcombination.

This situation has led the Solicitor for the Patent Office to suggest that possibly the question of double patenting may be involved. Appellant, in his brief, disclaims any purpose of double patenting, and, as we interpret his argument, concedes that the granting of his present application would protect him only as to the so-called "vital combination" of the two features recited, after his patent of April 3, 1923, shall have expired. It is his contention that the present claims, in so far as they relate to the "vital combination," are not genus but species claims, and involve a distinct additional invention for which patent may issue, citing In re Isherwood, 46 App. D. C. 507, 1917 C. D. 226.

Under the doctrine of the Isherwood Case, supra, it is clear, we think, as stated in the brief of the Solicitor for the Patent Office, that "appellant is not entitled to claims for a second form of his invention unless such claims to the second form involve an inventive difference over the claims already taken out in the patent for the first form." In re Swan, 46 F.(2d) 572, 18 C. C. P. A. ——; In re Forrest, 47 F.(2d) 395, 18 C. C. P. A. ——.

Among other cases appellant cites that of Thomson-Houston Electric Co. v. Elmira & Horseheads Ry. Co. (C. C. A.) 71 F. 396, wherein, at page 405, it was said:

"A machine or structure may embody several different inventions. There may be subcombinations in a machine which are new and useful, and operate conjointly to perform some subordinate function. Such a subcombination, if not patented by a claim, might be appropriated by another without infringing a patent for the machine. Being for a different invention, it is the proper subject of a distinct patent. While two or more inventions residing in the same combination or structure may be covered by a corresponding number of claims in a single patent, the law does not require them all to be claimed in the same patent, and the inventions may, at the option of the patentee, be secured by different patents."

Appellant correctly states the thought of the Thomson-Houston Case, supra, in his brief:

"The test is whether the species improvement involved invention; i. e., whether it is adapted to produce a new and unobvious result."

It does not seem to us that the Patent Office tribunals erred in holding that nothing patentable over the prior art appears in the claims at issue. Surely the control of cathode emission is old and requires means. The claims of appellant are simply for "means" of doing this, and are not limited to any particularly described means.

As for the "source of light" and the "photo-electric substance" mentioned in claims 24

to 26, Langmuir shows both, and appellant's claim would, apparently, substitute these Langmuir elements for the heated filament element of his own patent. The "means to vary the intensity of said light source," referred to in claim 26, is not inventive, we think, in view of the state of the art.

We are unable to see wherein the additional features or elements taken from the prior art and incorporated in appellant's appealed claims, either singly or in combination, perform any function which they have not heretofore performed, or produce any new result in the sense of the patent law.

We therefore agree with the concurring findings of the Patent Office tribunals and affirm the decision of the Board of Appeals.

Affirmed.