30 C.C.P.A.(Patents)

In re COPEMAN.

Patent Appeal No. 4735.

Court of Customs and Patent Appeals.
April 5, 1943.

Barnes, Kisselle, Laughlin & Raisch, of Detroit, Mich. (John M. Kisselle, of Detroit, Mich., William F. Swezey, of Flint, Mich., and Clarence O. McKay, of Washington, D.C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Lloyd G. Copeman has appealed here from the decision of the Board of Appeals of the United States Patent Office, which affirmed the decision of the Primary Examiner in rejecting claims 1 to 5 inclusive (all the claims) of his application for a patent relating to a "process of coating knit articles and product thereof." The alleged invention has especially to do with a "novel process of coating or treating knit articles formed of thin fine threads which are easily subject to 'laddering' or 'runs' such, for instance, as sheer silk stockings." It comprises the use of a dilute non-coagulated solution, preferably of rubber latex which has been pre-colored. Such pre-colored rubber is caused to adhere to the individual threads of the knit article in the form of a coating, the spaces between the threads remaining open. The carrying agent is evaporated, leaving the thin coating substantially covering each thread. The rubber coating may then be vulcanized in any conventional manner.

Claims 1 to 4 inclusive are drawn to the process, and claim 5 is directed to a silk stocking treated according to the process. Claims 1 and 4 appear to be representative and read as follows:

"1. The art of treating knit articles to prevent 'running' of the loops and to dye them, which comprises coating the portion of the article subject to such running with an aqueous dispersion of tinted rubber in dilute form adapted to adhere to the loops and then removing the greater part of said rubber whereby the area within each loop is open and the loops at their points of

contact are coated with said rubber with the coating on separate parts of the loops, united, said coating being tinted to provide the desired color of the article."

"4. The art of simultaneously treating and coloring knit articles to prevent running of the loops and for protecting the threads against moisture, spotting and moths, which comprises coating the individual threads of interconnected loops and adjacent their points of contact, with a dilute non-coagulated solution such as an aqueous dispersion of pre-colored rubber and the like adapted to adhere as a thin film and containing not less than 5% of colored coating solids, with the spaces between the threads free from coating material, evaporating the carrying agent and depositing said solids whereby to form a thin substantially continuous and highly flexible colored coating for the discrete threads and adjacent their points of contact, uniting the coatings of separate but adjacent threads at said points of contact to tie the threads together, and stretching the article to its proper shape and size before curing sets in."

The references relied upon by the Patent Office tribunals are Copeman's own reissue patent, Re. 21,269, November 21, 1939; Teague, 1,845,569, February 16, 1932; Dreyfus, 1,870,408, August 9, 1932; and Blunden (British), 314,727, July 4, 1929.

The examiner rejected all the claims as unpatentable over appellant's said reissue patent, which patent is for substantially the same process as that involved here except that the aqueous dispersion of rubber in dilute form is not necessarily (but may be) colored prior to treating the article with the same. The examiner pointed out that pre-coloring the latex was considered a well-known and unpatentable expedient, and called attention to the fact that Dreyfus, Teague, and Blunden showed simultaneous treating and coloring of knit articles by coating with a dilute aqueous dispersion of pre-colored rubber. He said: " * * * Consequently, to use colored latex, as shown by these references, in the process of the Copeman patent, is not considered a patentable variation."

The Board of Appeals, in affirming the examiner, said: " * * * The main reference cited against the appealed claims is appellant's reissue patent cited above. Ordinarily a copending patent of an applicant is not a proper reference against an application, but it is axiomatic that in order

that two patents may be greanted [sic] there must be two inventions. The patent is directed to the same process as claimed here, but the claims of the patent do not include pre-colored rubber solution although the patent states that the rubber solution can be given any desired tint or color. It is believed that it would be obvious to any one practicing the invention disclosed in the patent to tint or color the rubber before application if it was desired to obtain a finished product of any distinct color. This feature is shown to be old in the other references cited. It is generally recognized that in order that a later issued patent may be valid, it must disclose patentable subject matter over the first patent issued (See In re Isherwood 1917, page 226). In the present case it is not seen that the feature of adding the coloring matter desired to the latex before it is applied to the fabric amounts to invention, and, therefore, the decision of the examiner is affirmed."

Appellant, in his reasons of appeal, has not drawn into question the holding of the tribunals with reference to the prior art disclosure of the pre-coloring of rubber, and his specific reasons challenge only the action of the board in rejecting the claims on appellant's "copending patent reissue No. 21,269" and in holding that "it would be obvious to tint or color rubber before application, to anyone practicing the invention disclosed in patent No. reissue 21,269."

Appellant's main contention, as stated in brief, is as follows: "The Board of Appeals in rejecting the appealed claims has taken the broad stand that the addition of coloring matter to the latex dispersion disclosed in applicant's reissue patent would not amount to invention over that patent and that therefore the effect of allowing the appealed claims would be the granting of two patents for the same invention."

Appellant then argues that the process of his instant application is not the same as the process of said reissue patent, and that the instant claims are inventive over the claims of the patent, being for a different patentable invention.

It is interesting to note that the present application is called a "continuation in part" of appellant's application Serial No. 407,363, filed November 15, 1929, and that the reissue patent, Re. 21,269 states: "This application is a continuation in part of my application Serial No. 708,163 filed Jan.

24, 1934, which is a continuation in part of another application Serial No. 407,363, filed November 15, 1929."

It is furthermore of importance to note that in said reissue patent the following is found:

"The latex used in coating the knitted article, *may, of course, be tinted* so as to produce any color desired. In all instances, I prefer to use as thin a solution of latex as possible and to produce a final article wherein the individual threads are also coated with as thin a film of latex as possible. In those instances where all the threads and the entire length of each thread is coated, *it will be obvious* that such latex coating must either be transparent *or else be tinted* to obtain the desired shade. It may be desirable to knit the article with the original undyed or uncolored thread *and obtain the desired color by the coating.* (Italics ours.)

\* \* \* \* \*

" \* \* \* In the case of isolating the coating to the points of contact between the loops, *it will be obvious* that the color effect may be maintained by the original knit article, otherwise when the entire stocking and each thread and loop is coated *it will be obvious* that the coating material *must be tinted* unless the same should be transparent." [Italics ours.]

Appellant argues that said disclosure of pre-tinting in his reissue patent was but a "scant description of tinted latex" and would not be adequate to support the appealed claims; that if said description had been considered adequate, "the present application would have been filed as a divisional application rather than as a continuation-in-part containing specific instructions and disclosing definite coloring materials such as indigo, lamp black and oxidized hydroquinone." Then he states:

"However, applicant is not relying on the adequacy or inadequacy of the disclosure in the patent so much as he is on the fact that the claims are of different scope in the patent and the application and that the appealed claims define separate and independent invention over the patented claims."

Appellant then contends that no double patenting would result from the allowance of the instant claims for the reason that the *claims* of the reissue patent, and not its *disclosure,* are the determining factor. While it is true that the claims of a patent, and not its disclosure, are the determining factor, we agree with appellant's statement in his patent that it would be obvious that the coating material might be colored before it is applied. The patent points out that unless the coating were transparent it would hide the color of dyed threads and that therefore the coating, if not transparent, could be pre-colored. It is clear to us that no inventive concept is involved in tinting the latex the desired color before applying it to the textile. This being true, it seems to us that it logically follows that the appealed claims define nothing inventive over the reissue patent.

The law is well-settled that one may not have two patents for the same invention. One reason for this rule is that under the system of granting patents, the monopoly of a single invention might be— as in the present case if the appealed claims were allowed—greatly extended.

The Board of Appeals cited a case by the Court of Appeals of the District of Columbia (now the United States Court of Appeals for the District of Columbia), In re Isherwood, 46 App.D.C. 507. That case holds that where the inventions are the same, even though that claimed in the later-filed application is more specific than the former, the claims of the latter may not be allowed over the patent already granted to the applicant, since he has already obtained in his patent all the protection to which he is entitled. This was the holding irrespective of the fact that the examiner had required division. That case has been frequently cited by this court as being a proper statement of the law that an applicant's issued patent may be used in rejecting the claims of a subsequent application, although copending with the application of the patent, where the inventions are the same, notwithstanding the fact that the patent is not regarded as prior art. In other words, it is settled law that if an inventor has obtained a patent for a certain invention, he may not, in a subsequent application, be allowed a patent containing claims which do not distinguish patentably over those of the issued patent.

In In re Fischer, 19 C.C.P.A., Patents, 1077, 57 F.2d 369, 370, this court said: "On the question of double patenting, appellant cites Traitel Marble Co. v. [U. T.] Hungerford Brass & Copper Co., [2 Cir.], 22 F.2d 259. It is claimed that this case is authority for the proposition that the difference between the claims of a pending application and those of a patent granted

to the same party need not amount to invention.

"We think the weight of authority is to the effect that an inventor is only entitled to one patent for one invention, and that he cannot prolong his monopoly by claiming nothing more than the same invention in different language. In re Hutter, 55. App.D.C. 210, 4 F.2d 176; In re Woodsome et al., 56 App.D.C. 138, 10 F.2d 1003; In re Forrest, 18 C.C.P.A., Patents, 1028, 47 F.2d 395; In re Laughlin, 18 C.C.P.A., Patents, 1239, 48 F.2d 921; In re Isherwood, 46 App.D.C. 507; In re Swan, 18 C.C.P.A., Patents, 935, 46 F.2d 572; In re Peiler, 18 C.C.P.A., Patents, 1102, 48 F.2d 405; In re Byck, 18 C.C.P.A., Patents, 1208, 48 F.2d 665; In re Robinson, 18 C.C.P.A., Patents, 1271, 48 F.2d 931; In re Slepian, 18 C.C.P.A., Patents, 1393, 49 F.2d 835."

In In re Barge, 25 C.C.P.A., Patents, 1058, 96 F.2d 314, 316, we had the following to say: " * * * It is, therefore, settled law that in cases like the one at bar it is proper to hold the claims of a later filed application unpatentable in view of the prior art and of the claims of the applicant's issued patent. In re Isherwood, 46 App.D.C. 507; In re Swan, 18 C.C.P.A., Patents, 935, 46 F.2d 572; In re Slepian, 18 C.C.P.A., Patents, 1393, 49 F.2d 835.

It is not a question here as to whether, standing alone, appellant's process of coloring the rubber is inventive, but the important question is whether it is inventive over the claimed process of appellant's reissue patent, and we think appellant's own statements in that patent, as quoted above, show that it would not be inventive.

For the reasons stated, we think the Patent Office tribunals arrived at the right conclusion. Accordingly, the decision of the Board of Appeals, affirming that of the examiner in rejecting the appealed claims, is affirmed.

Affirmed.