34 C.C.P.A.(Patents)

**In re KORPI et al.**

**Patent Appeal No. 5261.**

Court of Customs and Patent Appeals.

March 25, 1947.

W. P. Epperson, of New York City (Daniel Stryker, of New York City, of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting claim 65 of an application for a patent alleging new and useful improvements in the alkylation of hydrocarbons. Twelve claims were allowed.

The application relates to a process said to produce a high grade motor fuel or aviation gasoline by means of a catalytic alkylation. In the process low-boiling isoparaffins, such as isobutane, are alkylated with an olefin such as butylene in the presence of a liquid alkylation catalyst such as strong sulfuric acid.

Claim 65 reads as follows:

"65. A continuous process for the alkylation of a low-boiling isoparaffin with an olefin, which comprises maintaining a relatively large agitated liquid body of reaction mixture including about equal volumes respectively of hydrocarbons in liquid phase and a liquid alkylation catalyst in a reaction zone under alkylating conditions, continuously introducing into said agitated body of reaction mixture a relatively small stream of fresh feed comprising a low-boiling isoparaffin and an olefin in liquid phase with the low-boiling isoparaffin in at least equivalent molar amount of the olefin to effect alkylation of said isoparaffin with the olefin with the production of normally liquid hydrocarbons within the gasoline boiling range, continuously withdrawing a relatively small stream of reaction mixture from the maintained agitated body in said reaction zone, continuously introducing the withdrawn stream into an intermediate point of an enlarged settling zone where the mixture separates into a hydrocarbon phase and a catalyst phase, adding additional catalyst to the reaction zone during the continuation of the reaction therein, continuously withdrawing a stream of the separated hydrocarbon phase from said enlarged settling zone and fractionating the same into an alkylate within the gasoline boiling range, a lighter fraction including unreacted hydrocarbons of lower boiling range than the said alkylate and a heavier residue of higher boiling range than the said alkylate, and continuously recycling at least a portion of said unreacted hydrocarbons to said reaction zone."

The examiner rejected the claim on the grounds of lack of disclosure of the claimed subject matter and lack of patentable distinction over claims 1 to 7, inclusive, of a patent to Korpi et al. (appellants here), No. 2,260,945, dated October 28, 1941, on an application, Serial No. 403,639, dated July 23, 1941, which was a division of the present original application, Serial No. 148,978, dated June 18, 1937. The claim was further rejected as unpatentable over a patent to Morrell, 2,169,809, dated August 15, 1939, in view of a patent to Frey, 2,002,394, dated May 21, 1935. The latter reason for rejection was reversed by the board, which stated in its decision that " * * * claims

cannot be drawn to matter outside the application disclosure." In all other respects the decision of the examiner was affirmed.

Appellants' request for reconsideration of its decision was denied by the board.

The Korpi et al. patent and the present application each discloses a batch and also a continuous operation of the process. Claims 1 to 7, inclusive, of the patent are clearly broad enough to read upon both species of the process and are, therefore, generic claims. Appellants do not question the scope of those patent claims.

It is contended that the rejected claim contains limitations which render it patentably distinct from the said patent claims. One of those limitations is that the process defined by claim 65 is continuous. Claims 1 to 7, inclusive, of the patent, however, cover both continuous and batch operations.

It was held below that the changing of a batch operation to one of continuous process does not involve invention. The examiner stated that in chemical processes continuous operation is quite common and that the conversion of batch operation to continuous operation is obvious to one skilled in the art. He further stated that both the Morrell and the Frey patents disclose continuous alkylation processes. We are of opinion, therefore, that that limitation does not lend patentability to the rejected claim.

A further limitation present in claim 65 and contended by appellants to warrant its allowance is the step of maintaining in a mixer tank a relatively large agitated liquid body of the reaction mixture. The examiner held that that step was not sufficiently disclosed in the original application. He stated that in the disclosure therein the only description of the mixer tank is as follows: "The mixer may be any suitable mechanical means for agitating or effecting contact between the oil and the acid, such as mechanical mixers, orifice plates, counterflow apparatus and the like."

On May 6, 1943, the specification was amended by adding, "as shown in the drawing, a vessel 5 [a mixer tank] is provided which is adapted to contain a substantial pool or body of the liquid reaction mixture."

Appellants contended below and contend here that the original disclosure, including the drawing which illustrates the mixer tank, is sufficient to justify the amendment. The examiner in his decision stated that the drawing is diagrammatic and, therefore, it could not be said that the mixer is of large diameter, nor could the size and kind of the mixing mechanism within the mixer be known and that that mechanism might occupy so much space as to prevent the presence of a large body of reaction mixture. He further held with respect to this limitation that, because the original disclosure was so meager, it was clear to him the step of maintaining a relatively large liquid body in the mixer lacked criticality and was, therefore, not patentable over claims 1 to 7, inclusive, of appellants' patent.

From an examination of the drawing without anything in the specification to indicate the relative sizes of the different tanks with which the process is concerned, we agree with the examiner that the drawings were properly considered as being diagrammatic. While, of course, it is true that the feeder pipes to the mixer are of narrow diameter as compared to that of the mixer, nevertheless we cannot say from the original disclosure that the feeding of the ingredients necessary to the process would necessarily result in the presence of a substantial pool of reaction mixture. In the continuous operation of the process the substances employed are constantly being fed into and constantly taken away from the mixer tank and there is no way, in our opinion, from an examination of the original disclosure to know what quantity of the mixture may be present during such operation in the mixer tank. It is our view, as was held by the examiner, that if such step were considered by the inventors to be critical, it would have been set forth with at least some degree of clarity in their original disclosure. We agree, therefore, with the holdings of the Patent Office tribunals that the limitation of main-

taining a relatively large body of reaction mixture, if disclosed at all, is of such a vague nature that it lacks criticality and is an unpatentable differentiation over appellants' patent claims 1 to 7, inclusive.

Claim 65 further contains the limitation that the body of the reaction mixture includes about equal volumes of hydrocarbons and alkylation catalysts respectively. In view of the fact that in appellants' specification various ratios of acid to oil appear to include substantially all ratios and proportions of acid hydrocarbons, we deem that limitation, as was held below, to be insufficient to lend patentability to the claim.

The limitation of recycling at least a portion of the unreacted hydrocarbons, as set out in the claim, was held by the examiner to be quite common and clearly lacking in invention. In support of his holding that such recycling is old in the art, the examiner cited the patent to Frey, pointing out that that patent discloses recycling of unreacted hydrocarbons.

It must be borne in mind that while the Board of Appeals reversed the rejection of the claim by the examiner on the prior art as aforesaid, there is no question here as to what is disclosed in the Morrell or Frey patents.

It is quite true that the rejected claim is of a different species from the species claims in appellants' patent. It is also true, as argued by counsel for appellants, that more than one species may be allowed in addition to generic claims. But in the present situation, before appellant can obtain another patent including claim 65, it must appear that the species therein disclosed is patentable over the generic claims of their patent. Otherwise the result would be double patenting. In re Ward, 32 C.C.P.A. (patents) 1238, 150 F.2d 436; In re Slepian, 18 C.C.P.A. (patents) 1393, 49 F.2d 835.

Since, in our opinion, claim 65 has been properly rejected, the decision of the Board of Appeals is affirmed.

Affirmed.