50 CCPA

**Application of Christian ZICKENDRAHT and Arthur Buehler.**

**Patent Appeal No. 6873.**

United States Court of Customs and Patent Appeals.
June 20, 1963.
Rehearing Denied Sept. 27, 1963.

A. Ponack, Wenderoth, Lind & Ponack, Washington, D. C. (Harry Goldsmith, Bryant W. Brennan, Summit, N. J., Joseph Kolodny, Baltimore, Md., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

Here the Board of Appeals has held that appellants have made but one patentable invention, therefore to grant the single claim involved in appellants' application [1] entitled "New Metalliferous Azo Dyestuffs" would involve "double patenting." Appellants argue that the instant claim is patentably distinct over the reference and is, therefore, entitled to patent protection.

The application relates to metallized azo dyestuffs prepared by reacting a cobalt or chromium-yielding reagent with certain monoazo dyestuff, such that two molecules of the latter are joined or complexed per molecule of metal. According to appellants' specification, the monoazo dyestuff can be prepared by known methods, as by coupling, in an alkaline medium, a diazotized 2-amino-1-hydroxy-benzene-5-sulfonic acid amide, which may be referred to as the diazo component, with 1:3-diphenyl-5-pyrazolone, referred to as the coupling component. The metallized dyestuffs are said to be suitable for dyeing and printing a variety of materials such as silk, leather, wool and synthetic fibers of superpolyamides, superpolyurethanes or polyacrylonitrile.

The claim reads:

1. The complex metal compound which contains one atom of one of the metals selected from the group consisting of cobalt and chromium bound in complex union to substantially two molecules of the dyestuff of the formula

---

[1]. Serial No. 427,362, filed May 3, 1954.

The same day applicants filed the instant application, they filed another,[2] which has since matured into a patent.[3]

Appellants' patent, like the instant application, also relates to metalliferous azodyestuffs prepared by treating certain monoazodyestuffs with an agent yielding cobalt or chromium under such conditions that a metalliferous dyestuff, which contains substantially two dyestuff molecules complexed per atom of the metal, is obtained. Claim 2 is representative of appellants' patented subject matter:[4]

"2. A complex chromium compound containing one atom of chromium bound in complex union with substantially two monoazo dyestuff molecules free from sulfonic acid and carboxylic acid groups corresponding to the formula.

wherein $R_1$, $R_2$ and $R_3$ each represent a benzene radical, at least one of which contains a member of the group consisting of a methyl group, a nitro group, a methoxy group and a chlorine atom and $R_1$ is bound to the azo linkage in ortho position relatively to the hydroxy group."

The examiner rejected the claim "as lacking invention over the claims of Zickendraht et al." He was of the opinion the claimed compounds are the next lower homologues of the patented compounds, and since they did not patentably distinguish therefrom, allowance of "the instant claim would amount to double patenting."

In affirming the examiner, the board said:

"* * * It is fundamental that only one patent may be granted for a single invention hence, *in order to make out a case for the grant of another patent, the claim under consideration must show an invention over the claims of the first patent.* * * *

* * * * * *

"In the instant case the *only difference* is that in the patent claims there is a substituent on one of the benzene rings while in the application there is not. *It has not been shown that this difference has any effect on the dyeing characteristics of the compound.* In fact, as pointed out by the Examiner, *both dyes are soluble in water.* It is therefore difficult to see wherein the statement in the patent that the substituent is one not imparting solubility in water is of any material significance. From the pure chemistry standpoint the variation is a common and obvious one. *We find no basis for concluding that two inventions are involved.*"[5] (Italics supplied).

■■ The sole issue is whether the instant claim defines a *patently distinct invention* over that claimed in applicants' patent. The doctrine is well established that claims in different applications need be more than merely different in form or content; and that a *patentable distinction* must exist to entitle applicants to a second patent. In re Ockert, 245 F.2d 467, 44 CCPA 1024; In re Korpi, et al., 160 F.2d 564, 34

---

2. Serial No. 427,361, filed May 3, 1954.

3. U.S. Patent No. 2,784,178, issued March 5, 1957, to Christian Zickendraht and Arthur Buehler.

4. Ibid.

5. On reconsideration, the board referred to 35 U.S.C. § 103 for the purpose of showing that an obvious variation does not constitute a patentable distinction. In view thereof, appellants allege confusion whether the rejection is based on double patenting or obviousness. We are satisfied the only ground of rejection is the former.

CCPA 956; In re Copeman, 135 F.2d 349, 30 CCPA 962; 57 USPQ 312.

There are two distinctions between the instant claim and those in appellants' patent. One is that in the appealed claim the sulfonamide group (-SO₂NH₂) is located *para* to the azo group, while in the patented claims its location is either unrestricted, or located *meta* to the azo group. The second is that in the patented claims at least one of the benzene rings must be substituted with a methyl, nitro, methoxy or chlorine group, while in the appealed claim the benzene rings contain no such substituents.

Appellants contend that those two distinctions constitute different inventive concepts. We fail to see why or how those differences can be considered *patentable distinctions*. They appear to us, as to the examiner and the board, to be merely a description of the factual differences, readily observable by one of ordinary skill in this field. Appellants have failed to show any conceptual difference, or to show that the differences are in any way material. With respect to the position of the sulfonamide group, the patented claims are generic, thus the group may be on *any* position. The patent disclosure, to which we may refer to understand the scope of the claims, In re Greenlee, 222 F.2d 739, 42 CCPA 926; In re Ward, 150 F.2d 436, 32 CCPA 1238, shows several azo dyes having the sulfonamide group located *para* to the azo group. Hence, the location of that group cannot represent a different inventive concept, nor a patentable distinction.

With regard to the second difference, i. e. substitution of the benzene rings, it was the examiner's position that the claimed compounds represent the next lower homologue of the patented compounds. We need not decide whether the compounds are properly labeled homologues. The name used to designate the structural relationship between related chemical compounds is not necessarily controlling; rather it is the closeness of that relationship, a question of fact, which is indicative of the obviousness or unobviousness of the new compound. In

re Druey et al., 319 F.2d 237, 50 CCPA ——; In re Herr, 304 F.2d 904, 50 CCPA ——. Here the difference between the claimed compound and one of the patented compounds is merely the presence or absence of a methyl group on one of the benzene rings in a complex molecule. Appellants urge that the patent stresses that the diazo and coupling components must be selected to insure the production of an azo dye having at least one of the named substituents on the benzene rings, and that such substituents do not impart solubility in water to the dye. They urge also that according to the instant specification "no further substituent is *necessary* as in the case of the patent." (Italics supplied). The examiner, in commenting on that difference stated:

"* * * both the patented and presently claimed metal complexes are water-soluble. Only a difference in degree is involved insofar as water solubility is concerned. * * *"

We note that applicants' patent discloses both components of the dye, each of which may contain benzene rings without any substituents thereon. It seems to us that the patent disclosure would suggest to one skilled in the art reacting any of the diazo components in column I of the patent with any of the coupling components in column II, since the same basic coupling reaction is involved in each case. Appropriate selection of the diazo component and the coupling component therefrom should result in production of the dye claimed herein. In view of the fact that appellants have failed to explain why the presence or absence of substituents on the benzene ring is of *any material significance,* and have failed to offer any proof to substantiate their allegation that two different inventive concepts are involved, it appears to us, as it did to the examiner and the board, that there is but one patentable invention here to which both the patented and appealed claims are directed.

Appellants contend also that if the instant application and the patent had been filed by different inventors, no

interference could be possible, since the claims and disclosures are mutually exclusive. Double patenting may exist even where, as here, the claims in two cases are not mutually cross-readable. In re Ockert; In re Ward et al., 236 F.2d 428, 43 CCPA 1007.

Appellants' reference in their brief to the terminal disclaimer provisions of 35 U.S.C. § 253 is noted. We do not find, however, that question to have been raised below, thus we cannot consider it here.

The decision is affirmed.

Affirmed.

MARTIN, Judge, concurs in result only.

RICH, Judge (concurring).

I agree that the rejection of the claims should be affirmed and I agree that the reason for the rejection is "double patenting." But I cannot agree with the apparent underlying concept of the court's opinion that the reason for so holding is that there is "but one patentable invention" encompassed by the reference patent claims, as between which there is no "conceptual difference." I think this is contrary to the plain facts of the case. First, as to the facts:

Appellants filed two patent applications on the same day, Ser. No. 427,361 and Ser. No. 427,362.[1] These two applications disclose two distinct inventions. For the sake of simplicity I will identify them by reference only to the one characteristic which distinguishes them. The '361 case discloses and claims a metallized azo-dyestuff in which there is a benzene ring having a substituent, such as a nitro, alkoxy, or alkyl group, or a halogen atom. The '362 case discloses and claims a similar metallized azo-dyestuff in which

there is *no* such substituent.[2] It seems beyond question that these two applications disclose two distinct groups of dyestuffs, the group with substituents and the group without substituents, which any chemist would recognize as not being the same compounds. We are dealing, therefore, with two applications describing and claiming two different inventions, albeit there is a close chemical relationship between the two groups of compounds.

Lest I be misunderstood, when I call something "an invention" I do not imply that it is patentable. Neither do the patent statutes. Note that 35 U.S.C. § 101 is entitled, "Inventions patentable," from which it is to be inferred that there are inventions which are not patentable. Similarly, section 103 refers to "the invention" on which a patent "may not be obtained." Section 102, in every paragraph except (f), refers to "the invention" which cannot be patented for one reason or another. To call a thing an "invention," therefore, does not today impute patentability.

The '361 application was allowed to mature into patent 2,784,178 on March 5, 1957, which patent was cited as a "reference" in the '362 application. The claim on appeal was rejected on this reference on the ground that to allow it would result in "double patenting." Thus appellants obtained a patent on one of their groups of dyestuffs, the "with-substituent" group, and are now being refused a patent on the other group, the "no-substituent" group. The patent they have obtained gives them no protection on the "no-substituent" group because all of its claims are limited to dyestuffs *with* substituents. Were the claim on appeal to be patented, it would in no way protect or read on the "with-sub-

---

1. Neither of the applications, as filed, referred to the other, though this point has not been mentioned. The two applications claim convention priority from two Swiss applications filed on successive days.

2. I am not overlooking the fact, omitted for simplicity, that in both cases the azo-dyestuff has one benzene ring having two substituents, a $-SO_2NH_2$ group and a hydroxyl group. What I refer to above, without so designating it, is the "additional substituent," the presence of which appellants rely on to distinguish the inventions and for patentability.

stituent" group because it is limited to "no-substituent" compounds. Yet it is said there would be "double patenting." Why? Obviously, nothing would be patented *twice* if a patent were granted on the invention of the appealed claim. There would be two patents on two inventions. Why not?

The court's opinion avoids this problem by concluding that "there is but one patentable invention here to which both the patented and appealed claims are directed." The clear language of the claims seems to be inconsistent with such a conclusion. The claims are carefully drafted to maintain a clear distinction between the "with-substituent" and "no-substituent" groups of dyestuffs. If there had been an intent to direct the claims to the *same* invention this would have been a strange way to carry it out.

In reaching its conclusion that there is but one patentable invention the majority refers to the following statement of the board: "We find no basis for concluding that two inventions are involved." Without reading the entire opinion and without considering what the board almost certainly *meant* by that statement, it would, indeed, create the impression that the board literally said there is only one invention involved. But, I submit, that is not what the statement of the board really means. Earlier in its opinion, which is a very short one, the board said that to be patentable the claim on appeal "must show *an invention over* the claims of the first patent." [My emphasis] In plain language, the meaning of that statement is that *the invention* of the appealed claim must be one which would not be obvious to one having ordinary skill in the art and assumed to know about the other invention already claimed in the patent. It does not necessarily mean that the appealed claim is *directed to* the *same* invention as the patent if it fails to "show inven-

tion over" the latter. It could as well be directed to an *obvious* improvement on the patented invention, or an obvious variant, whether or not an improvement. See our recent opinion in In re Simmons, 50 CCPA 990, 312 F.2d 821, 136 USPQ 450.

Because the board used the word "invention" in two different senses,[3] to mean the *group of compounds* claimed and also the *unobviousness* of that group, in view of the group claimed in the patent, I submit that when it used the phrase "no basis for concluding that two inventions are involved," what it was truly saying was that two *patentable* inventions are not involved. When one looks to the cases cited and to the whole field of "double patenting" law in the context of which the board was writing its opinion, that such was the meaning intended is clear to me. It is practically standard "double patenting" terminology. Moreover, the examiner, and the board in quoting the examiner, demonstrated explicit recognition of the fact that the compounds claimed in the patent are a different group from the compounds of the appealed claim in stating that the former "are higher homologs and analogs of the instantly claimed compounds." This is not consistent with the position that the claims are directed to the *same* inventive concept.

"Double patenting" is a loose phrase meaning many different things. In addition to the pure sense of meaning two patents claiming the *same* invention, it has also for a long time included *a second patent claiming an invention which differs from an already patented invention only in some unpatentable particular*. It is only in the latter sense that we have double patenting here; and in that sense it assumes the existence of a *second invention* which, however, is *unpatentable over the invention previously patented*. There is an important difference between

---

3. Still, unfortunately, this is a very prevalent practice in the Patent Office, notwithstanding 35 U.S.C. § 103 was so written as to make unnecessary this confusing terminology. Trouble always arises in thinking clearly in terms of an invention having to involve "invention" to be patentable, the next step being to think that all "inventions" *are* patentable, which is a far cry from the fact.

the situation where there is *one* invention being twice claimed and the situation, as here, where there are *two* inventions and one is unpatentable over the other. They should not be confused. Different principles of law apply and it is important to recognize and to maintain the distinction.[4]

As I view this case, then, there were two applications disclosing and claiming two inventions on one of which a patent issued. The patent claims the "with-substituent" group of dyestuffs. The sole issue on appeal is whether the appealed claim to the other group, the "no-substituent" group, defines an invention which can now be separately patented *notwithstanding the issuance of the patent on the first group*. On this question, the important facts, which I will discuss, are: (1) the closeness of the chemical relationship between appellants' two groups of compounds and the specific differences between the groups as defined by the claims, and (2) the effect of the issuance of the patent.

(1) I agree with the conclusion reached that the situation, with respect to the "additional substituent," the sole distinguishing feature of the claims, is tantamount to that which exists between adjacent homologs, whether or not that is the appropriate term to apply here, and that no showing has been made to counteract a factual inference of obviousness of one group over the other. I think we properly give no weight to the specific para position of the $-SO_2NH_2$

group in the appealed claim since that is a mere difference in scope from the patent claims which are inclusive of it. It has not been shown that there is any necessary relation between said para position and the other difference, namely the absence in the second group of dyestuffs of the substituents specified for the first group.

(2) Having considered the cases relied on by both sides, and many others, it is clear that it has been a firmly established rule in this court for over thirty years that when an applicant *takes out a patent* on one of two or more copending applications on closely related inventions, he shall not be allowed claims in the other applications except on subject matter which is patentably different from the subject matter *claimed* in his patent. See, as one early case, In re Slepian, 49 F.2d 835, 18 CCPA 1393. This assumes, of course, that, by virtue of a requirement of restriction, applicant is not entitled to the protection of 35 U.S.C. § 121. Notwithstanding the fact that this rule grew out of cases involving a great diversity of fact situations, including attempts to claim the same invention in two patents (identic monopoly), it has long been applied, both here and in the Patent Office, to situations like the one before us in this case, in which there is not one invention but two.

The rule is not only one of very long standing but it is, I believe, a rule which operates in the public interest. When

---

4. Where there is in fact only one invention and, in one way or another, it is being claimed twice, it would seem appropriate to refer to 35 U.S.C. § 101 as authority for saying that the statutes permit an inventor to obtain *a* patent, meaning only one patent. Where there are in fact *two inventions*, whether or not they are patentable, this statute would seem to be inapplicable and the second patent has to be denied, if it is denied on some other ground. The ground one finds stated in the cases is to the effect that the second invention must be patentable on its own account, over the invention *claimed* in the

issued patent, just *as though* the invention so claimed were in the prior art, and tested (since 1953) by the unobviousness requirement of 35 U.S.C. § 103. But since the patented invention is *not* prior art, the basis for denial is not a statutory basis; rather it is a case-law development. Where, as here, there are two distinct inventions, each separately patentable in the *absence* of a patent on the other, it seems to me that a "double patenting" rejection might be avoided by the filing of a terminal disclaimer under 35 U.S.C. § 253, which was not done in this case.

a patent issues, and there is no requirement of restriction of record to show that there are other applications still pending on related subject matter, the public should be able, upon *seeing* the issued patent, to act on the assumption that the patentee's protection is limited to what he claims and that what is not claimed, in the way of *obvious* modifications, alternatives, and the like, will be free of protection through any *later* patents issued to the patentee. The public should also be able to act on the assumption that upon *expiration* of the patent it will be free to use not only the invention claimed in the patent but also any modifications or variants thereof which would have been *obvious* to those of ordinary skill in the art at the time the invention was made, taking into account the skill of the art and prior art other than the invention claimed in the issued patent.

To sum it up, the operation of the rule is that claims to inventions closely related to the invention claimed in a patent and not patentably distinguishable therefrom must be included in the same patent unless the applicant has been forced to make them in a separate application by a requirement of restriction, in which case section 121 of the statute acts to waive the rule. It is possible that the operation of the rule may also be avoided by so using the terminal disclaimer provision of section 253 as to assure that any later issued patent will expire on the same day as the earlier patent; but in such a case two questions remain to be answered. Should not the file of the earlier patent contain a notice to advise the public that there is a later issued patent which must be considered, just as there is a warning in a file wherein restriction was required? And is the matter of possible divided ownership of two patents on independent but patentably indistinguishable subject matter of any real importance?

This does not appear to me to be a proper case in which to rule on the legal effect of a section 253 terminal disclaimer as a means of obviating the objec-tionable timewise extension of monopoly aspect of "double patenting" for the reason that no such disclaimer has been filed. There is only the barest suggestion of such a possibility in appellants' brief. For the same reason there is no occasion to pass on the effect In re Siu, 222 F.2d 267, 42 CCPA 864, might have here if a terminal disclaimer had been filed. It is noted, however, that the Siu case, which was a common assignee type of "double patenting" case, is one in which two different applicants were claiming the *same* invention, a *process* of producing filamentary material from molten material by a blast of gas or vapor, the only difference being, apparently, the naming of the material to which the process was applied—*glass* in the appealed claim and *inorganic material* in the patent. The case would seem to stand, therefore, at most for the proposition that where there is only *one* invention, two patents should not be granted, notwithstanding the filing of a terminal disclaimer; it has little or no bearing on a situation where there are in fact two inventions. This is another illustration of the necessity for distinguishing the two situations. See footnote 4, supra.

For the above reasons I agree with the affirmance of the rejection on the ground that the claim on appeal defines only an obvious variation of the patented compounds and that its allowance would therefore constitute "double patenting."

Footnote 5 of the court's opinion seems to be a selection of "double patenting" as the basis of rejection to the exclusion of a rejection based on the obviousness of the invention claimed here in view of the compounds claimed in appellant's issued patent. No such selection is possible, of course, because the double patenting rejection is predicated on such obviousness. The board was entirely correct in referring to 35 U.S.C. § 103 as a basis for refusing the second patent. Though it is not technical "prior art," the test is the same in determining whether the later claims define an invention patentable over that claimed in the

patent. The test is the same because the same principle is involved.

SMITH, Judge (concurring).

We are here dealing with metallized azo-dyestuffs in which the benzene rings may either have certain substituents thereon as claimed in the appellants' issued patent, or they may have no substituents thereon as claimed in the claims on appeal. I agree with Judge RICH's concurring opinion that the claims in the application before us and the patent claims define separate inventions and that appellants have not factually supported their position that the appealed claims are separately patentable. I, therefore, concur in the result reached by the majority.