27 C.C.P.A.(Patents)

### In re REPLOGLE.

Patent Appeal No. 4185.

Court of Customs and Patent Appeals.
Dec. 4, 1939.

John M. Leach, of New York City, for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner rejecting seven claims (being all the claims) numbered 1 to 5, inclusive, 8 and 9, of appellant's application for patent, entitled "For Packages," relating in particular to a retail cigarette package. The subject matter is fully illustrated by claim 2 which reads:

"2. As an article of manufacture, a retail cigarette package having its walls formed of a single layer of a laminated material comprising an innermost sheet of relatively opaque foldable material, a layer of printing, and an outermost sheet of transparent material adhesively united to the opaque material so that the printing may be seen through the transparent sheet, an end of the package being metallized."

It is thought that the package may be visualized from the language of the claim and that but little elaboration in description is necessary. It appears that the "layer of printing" feature may be produced by making the imprint either on the face of the backing material adhering to the wall, or on the inner face of the outside transparent wrapper. The metallization feature which is involved in all the claims except claim 1 is produced according to appellant's brief wherein his specification is paraphrased, "by depositing a suitable thin coating of metal over the areas of the laminated sheet which form the ends of the package, or by adhering a thin metal foil over these areas."

There is, we assume, a very general familiarity with forms of cigarette packages sold at retail, and appellant's specification recites the purpose of "simulating in appearance" the type of such packages "now in common use."

Numerous advantages are claimed for appellant's package, which package the brief refers to as "a novel 'single-walled' package," such as preventing variation in the moisture content of the cigarettes, protection of them against contaminating elements and against their tearing or bending.

The matter of attractiveness in appearance is referred to and also the matter of economical production.

Patentability was denied by the tribunals of the Patent Office in view of the disclosures in two patents, viz., a British patent to Wolff & Co., No. 328,269, dated April 22, 1930, entitled "Improvements in and relating to Sheet or Strip Material for Packing, Covering, Decoration and similar purposes," and United States patent No. 452,109, granted to Thomas J. Maloney May 12, 1891, entitled "Tobacco-Package and Wrapper for the Same."

The specification of the British patent (which contains no drawings) discloses "a sheet—or strip-like product of any desired width and length for packing, covering decoration or ornamentation and similar purposes." The sheet is described as a "compound body," it being formed of a foundation layer and a second layer adhesively imposed thereon. Both layers may be of the same materials or of different materials. Materials specifically mentioned are paper, textile fabric, metal foil, ramie material, and cellulose film or strip. The adhesive element with which the foundation layer is coated is described as "a water-insoluble" adhesive. The specification teaches that printing may be applied to either the base layer or to the outer layer in a manner which obviously would form a "layer of printing" between the two layers arranged as is the printing layer of appellant's package.

As has been stated, the patent contains no drawings and no form of package is claimed or described.

As we understand the patent, it is simply for the compound sheet described—a sheet from which packages for various uses may be made if desired.

There is a suggestion in the brief for appellant that the sheet of the British patent was intended for making "packing" rather than "packages," using "packing" in the sense of a finely divided comminuted material used as a shock absorber in the manner in which excelsior is sometimes used. This, we think, is untenable. The patent clearly teaches use as a covering along with other uses, and we think the patent would not justify the narrow interpretation which appellant suggests.

The patent to Maloney seems to have been cited by the examiner solely upon the metallization feature mentioned in six of the claims. The board, however, said of

it that it "clearly shows the use of a strip used for making a cigarette package." This statement appears to be inaccurate because the specification seems to limit the package to use for "packing cut tobacco for smoking or chewing." However, it is disclosed that the ends of the package are metallized, strips of foil being adhesively attached thereto, and one figure of the drawings shows printing which may be upon the outer wrapper, or an independent label may be applied. We regard this patent as being pertinent upon the metallization feature only.

The tribunals of the Patent Office held, in substance, that no invention would be involved in making a cigarette package from the sheet described in the British patent and that the metallization feature of appellant's package presented nothing patentable in view of Maloney.

Whether any patent has ever been granted for a package for holding cigarettes we are not advised. None has been cited here, the Maloney patent, as stated above, being a package for tobacco in a different form. It is a matter of common knowledge of which we may take judicial notice that it is the common practice to package cigarettes in the factories where they are made, machinery being used in manipulating the packaging material into form. Enc. Brit. Vol. 5, 14th Ed. pages 704-5.

Some cigarette packages (which bear no patent indicia) were filed as exhibits in the case along with an affidavit of appellant and one of another party, but these were filed long after his appeal to the board and after the examiner's statement. The board made no reference to them in its decision, and in his reasons of appeal to this court appellant asserts that the board erred in not giving such exhibits and the affidavits "proper weight."

The record does not disclose any effort on the part of appellant to have the case remanded to the examiner for his consideration of those matters, and, under such circumstances, in view of Patent Office rule 138, it was not error on the part of the board if it did proceed without taking them into consideration. Whether the board did, in fact, consider them we do not know, but we may state that from our examination of them we fail to see where they could be regarded as helpful to appellant. Indeed, if it were proper to consider the packages as prior art they would tend to weaken rather than strengthen his case. However, we have not so considered them.

The question reduced to its simplest form (the metallization feature being clearly anticipated) is, was it inventive to make a package for cigarettes, "simulating in appearance the retail cigarette packages of the type now in common use," as recited in appellant's specification, from material such as that disclosed in the British patent?

We are unable so to conclude.

That appellant evolved a desirable package may be conceded, but he made it from material of a type and having a structural arrangement covered by the British patent. We agree with the tribunals below that it required nothing more than mechanical skill to take such material and put it in package form.

The decision of the Board of Appeals is affirmed.

Affirmed.