37 C.C.P.A. (Patents)

**Application of ROSE.**
**Patent Appeal No. 5653.**

United States Court of Customs and Patent Appeals.
May 9, 1950.

Harker H. Hittson, Columbus, Ohio, for appellant.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for Commissioner of Patents.

W. W. Cochran, Washington, D. C., on the brief as former Solicitor for Patent Office.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL and JOHNSON, Judges.

GARRETT, Chief Judge.

Appellant Rose seeks review and reversal of the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of ten claims, numbered 1, 2, 5, 6, 7, 16, 17, 18, 20, and 21, embraced in his application for patent on alleged improvements in a loader or conveyor such as is used in coal mines.

Specifically, says the Primary Examiner, "The invention relates to a hydraulic jack system for tensioning the conveyor chain on the discharge section of a loader used in a coal mine."

The Primary Examiner's description of the device, slightly paraphrased in order to avoid the use of designating numerals, which, in the absence of drawings, would not be clarifying, is as follows:

"The loader disclosed has the usual gathering section which picks up the loose coal and delivers it to the discharge conveyer. This conveyer has one trough section which is fixed on the frame and a swingable tail section. A conveyor chain extends thru both of these trough sections. The chain extends around a pulley mounted on an adjustable shaft.

"The tail section is swung from side to side of the frame by the two single acting hydraulic motors mounted on this section. Each motor has a piston carrying a pulley which cooperates with a steel cable.

"When the tail section is adjusted to one side or the other, the conveyer chain will become slack. The novelty in this case resides in the use of hydraulic jacks to adjust the position of the shaft to compensate for the change in the slack or tension of the conveyer chain.

"This jack system includes pumps mounted on the housings of the motors, hydraulic jacks mounted on the outer end of the frame and fluid conduits interconnecting the pumps and the jacks.

"The operation of the device is as follows:

"If fluid is admitted to one of the motors, the piston will move outwardly carrying the pulley with it. This will act on a cable to swing the rear section of the discharge conveyer. The cable on the opposite side of the frame will force the piston into a cylinder. The abutment, which is carried by this piston, engages the piston of one of the pumps. Liquid is forced from this pump to the two hydraulic jacks, and the pistons of these jacks move the conveyer shaft outwardly to take up any slack in the conveyer chain."

Seven claims stand allowed, four of which (numbered 3, 8, 9, and 10) were allowed by the Primary Examiner and three (numbered 4, 11, and 19) were allowed by the board, which reversed the examiner's rejection of them.

Eight of the ten claims on appeal—numbers 1, 2, 7, 16, 17, 18, 20, and 21—were rejected by the Primary Examiner and the board as ambiguous and failing to comply with the definite requirements of section 4888, R.S., 35 U.S.C. § 33, 35 U.S.C.A. § 33, that an applicant for a patent shall "particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention."

Claims 5 and 6 were rejected "as being unwarranted by the disclosure or incomplete," and claim 7 was rejected additionally for lack of disclosure.

In addition to being rejected on the ground of ambiguity, claim 18 also was rejected as being unpatentable over the prior art embodied in a patent, No. 1,785,402, issued to E. M. Arentzen December 16, 1930. Error is alleged as to that ground of rejection in appellant's reasons of appeal, but that reason is not discussed in the brief for appellant, and, under the well settled practice, it will be treated as having been abandoned. In re McCabe, 90 F.2d 111, 24 C.C.P.A., Patents, 1224.

Claims 1, 2, 7, and 21 also were rejected as unpatentable over the Arentzen patent and the rejection is covered in the reasons of appeal and discussed in appellant's brief.

The patent is for an articulated conveyor having use in the conveying and delivery of many kinds of "material, goods or merchandise." The conveyor, as stated in substance in the brief of the Solicitor for the Patent Office, comprises a rigid section and a horizontally swinging section. An endless "scraper chain" travels through the conveyor and at the free end of the conveyor travels over a roller or pulley which is rotatable upon a tail shaft that is mounted for chain tensioning adjustment. The mounting includes springs, or the like, operative to the movement of the swinging section to adjust the position of the shaft relative to that section.

We quote here appealed claims 1, 5, and 7:

"1. In a loading machine, the combination with a main frame, of an articulated conveyor mounted thereon including trough forming conveyor frame members mounted for relative swinging movement about an upright axis, endless draft conveyor mechanism adapted to travel through said conveyor trough, a tail shaft over which said draft mechanism travels, means mounting said tail shaft on one of said frame members for chain tensioning adjustment relative thereto, and non-resilient means operative in response to swinging movement of one of said frame members to adjust the position of said shaft relative to said one frame member, said means including a movable non-resilient abutment for moving said tail shaft.

"5. A conveyor including a trough formed of two articulated frame parts connected for relative swinging movement about an upright axis, an endless conveyor chain adapted to travel through said trough, a shaft on said trough over which said chain travels, means for driving said chain, said chain in moving tending to pull said shaft in one direction, abutment means holding said shaft against said movement, positive means operative automatically in response to relative swinging movement of said articulated frame parts to adjust the position of said abutment means, said automatic means including a hydraulic piston motor for adjusting said shaft, and means responsive to swinging movement of said articulated frames to feed hydraulic fluid to and from said hydraulic piston motor.

"7. A conveyor including a trough formed of two articulated frame parts connected for relative and true arcuate swinging movement about an upright axis, an endless conveyor chain adapted to travel through said trough, a shaft on said trough over which said chain travels, means for driving said chain, said chain in moving tending to pull said shaft in one direction relative to said trough, movable non-resil-

ient abutment means holding said shaft against said movement, and means operative automatically in response to relative swinging movement of said articulated frame parts to adjust the position of said non-resilient abutment means independently of the tension of said chain."

We do not find any limitations in any one of the other claims on appeal which would seem to differentiate it in a patentable sense from those so quoted.

■ It is noted that both claims 5 and 6 require "automatic means including *a* hydraulic piston motor for adjusting said shaft"—meaning the tail shaft. (Italics supplied.) It was found by the tribunals of the Patent Office that the specification failed to disclose any modification in which a single motor could operate to move the shaft.

On the contrary, as we understand the finding, two motors were disclosed as being required for that purpose, and the Primary Examiner (whose holding was adopted by the board) held that the "elimination of one of the motors will result in a device which will be practically useless for the purposes desired."

We have carefully considered appellant's argument as to the rejection of the claims upon the ground stated. It is urged that since the automatic adjusting means disclosed includes two hydraulic motors, necessarily one is included, and, apparently for that reason, argued that the claims are readable upon the disclosure.

It may be that the claims might be read upon the disclosure, and it is urged on appellant's behalf that the case is analogous both on the law and the facts to that of In re Vickers et al., 141 F.2d 522, 526, 31 C.C.P.A., Patents, 985.

Obviously, there is a clear and important distinction between the two cases. We there quoted from the Vickers specification and said: "It is apparent from the quoted excerpt that the accumulator piston may be used not only to effect normal reversal of the directional valve, but also to delay the operation of that valve for the purpose of replenishing the system. Accordingly,

it is plainly suggested in appellants' specification that the accumulator piston alone may operate the valves for the purposes set forth in the appealed claims."

We find nothing in appellant's specification which so much as suggests that the result desired could be obtained by the use of a single motor.

We find no justification for reversing the rejection of claims 5 and 6.

■ The Primary Examiner, is his statement following the appeal to the board, discussed the claims which were held to be ambiguous by both himself and the board; namely, claims 1, 2, 7, 16, 17, 18, 20, and 21, as follows: "These claims contain the negative limitations of 'non-resilient' means or abutments. This negative expression is believed to be bad because it attempts to recite what applicant does *not* show rather than the apparatus disclosed. This expression was used in an attempt to distinguish over a reference which uses springs for the same purpose as applicant uses the hydraulic jacks. It is believed to be improper to permit claims which recite all means for accomplishing a result *except* the one shown in the prior art. There is no difficulty in accurately reciting the invention applicant discloses. The Patent Statute requires applicant to distinctly claim *his* invention. He fails to comply with this requirement by the negative limitation which attempts to exclude one patented device without distinctly claiming his invention." (Italics quoted.)

In its decision concurring in the rejection the board said *inter alia*:

" * * * Obviously, the expression 'non-resilient' would apply to all means that are not resilient. Since appellant has specifically disclosed but one form of such means, he should not be permitted to draw claims couched in such broad terms as to read on all forms of such means whether known or unknown.

"Appellant states in his specification that he may use a mechanical linkage in place of his hydraulic linkage but such a broad statement does not constitute a disclosure of a specific apparatus for performing the necessary functions of appellant's device."

202

It is pointed out in the brief of the Solicitor for the Patent Office that the concurring decision of the tribunals of the Patent Office is in harmony with numerous decisions of the court, citing In re Langdon, 77 F.2d 920, 22 C.C.P.A., Patents, 1245; In re Tschop, 139 F.2d 515, 31 C.C.P.A., Patents, 753; In re Spengler et al., 147 F.2d 1013, 32 C.C.P.A., Patents, 855; In re Wharton, 156 F.2d 180, 33 C.C.P.A., Patents, 1198.

It seems to us that the instant case is clearly distinguishable on the facts from the cases called to our attention in the brief for appellant.

Since no error is found in the rejection of the claims 1, 2, 7, 16, 17, 18, 20, and 21 upon the ground of ambiguity and failure to comply with the specific requirement of section 4888, R.S., discussion of other grounds of rejection is unnecessary.

The decision of the board is affirmed.

Affirmed.