40 C.C.P.A.(Patents)

**Application of SCHECHTER et al.**

**Patent Appeal No. 5935.**

United States Court of Customs
and Patent Appeals.

June 3, 1953.

T. A. Seegrist, Washington, D. C. (L. M. Mantell, Washington, D. C., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in finally rejecting claims 17, 19, 20, 21, 23, 46, 47 and 48 of appellants' application, serial No. 75,282, for a patent on "Synthesis of 4-Hydroxy-2-Cyclopenten-1-Ones." All appealed claims are product claims. Twelve method claims and one product claim, claim 18, were allowed by the examiner.

Claims 19, 20, 21 and 23 have been rejected as drawn to non-elected species and that rejection is not challenged by appellants. Accordingly, those claims will not be considered on their merits by this court. See In re Jones, 162 F.2d 638, 34 C.C.P.A., Patents, 1168.

Appealed claims 17, 46, 47 and 48 read as follows:

"17. A synthetic cyclopentenolone of the formula:

R'
|
C
/‖\
H—C    C—R
|  ‖
HO—C    C
|        ‖
H—C————C=O
|
H'

in which R' is a radical taken from the group consisting of alkyl, alkenyl and aryl and R is an alkenyl radical *other than 2-butenyl and 2, 4-pentadienyl.*

"46. A racemic synthetic compound of the formula defined in claim 17.

"47. A synthetic 4-hydroxy cyclopentenolone of the formula:

R'
|
C
/‖\
H—C    C—R
|  ‖
HO—C    C=O
|
H—C
|
H'

in which *R is a hydrocarbon radical taken from the group consisting of those having less than four and those having more than five carbon atoms,* the R radical having at least one olefinic double bond, and in which R' is a hydrocarbon radical.

"48. A 4-hydroxy cyclopentenone of the group consisting of 2-Allyl-4-hydroxy-3-methyl-2-cyclopenten-1-one; 4-Hydroxy-3-methyl - 2 - (2 - methylallyl) - 2 - cyclopenten-1-one; *synthetic racemic 2-(2-butenyl)-4-hydroxy-3-methyl-2-cyclopenten-1-one, the semi-carbazone of which has a melting point with decomposition at about 222–223° C.;* 2-(3 - Butenyl) - 4 - Hydroxy - 3 - methyl - 2 - (3 - methyl - 2 - butenyl) - 2 - cyclopenten - 1-one; 4-hydroxy-3-methyl-2-cyclopenten-1-one; and 2-Allyl-4-hydroxy-3-phenyl-2-cyclopenten-1-one."

The present application relates to the preparation of a new class of synthetic organic compounds called cyclopentenolones, which are used as intermediates in the synthesis of pyrethrinlike insecticides by esterifying the said cyclopentenolones. Appellants state that they believe they are the first to succeed in synthesizing pyrethrinlike insecticides. Heretofore, according to appellants, the sole source of pyrethrin insecticides has been from the natural products, mainly from the pyrethrum flower, grown primarily in Kenya Colony, Africa. It appears from the record that this class of natural insecticides consisted of two known natural pyrethrins and two natural cinerins.

The preparation of the cyclopentenolones here claimed required the synthesis of a new class of hydroxydiketone compounds to be used as starting materials. Those starting material compounds are covered by allowed claims in appellants' divisional application, serial No. 168,142, which has issued as U. S. Patent No. 2,574,500.

The final synthetic pyrethrinlike insecticides which are esters of the cyclopentenolones of the appealed claims are covered in allowed claims in another divisional application, serial No. 161,481, issued as U. S. Patent No. 2,603,652.

Appellants claim the inventions of these three applications have led to a new industry devoted to production of synthetic pyrethrinlike insecticides having special desirable properties not possessed by the natural pyrethrins.

The process required to make the claimed cyclopentenolones essentially comprises the following steps: Pyruvaldehyde ($CH_3$ COCHO), or other substituted glyoxal, is reacted with a sodium salt of a beta-keto acid thereby yielding a hydroxydiketone of the type covered in appellants' patent No. 2,574,500. The hydroxydiketone so produced is cyclized to yield the cyclopentenolones of the appealed claims by treating them with a cyclizing agent, such as an aqueous alkali, in accordance with the method of the allowed process claims in the instant case.

The sole reference relied on by the Patent Office tribunals is:

LaForge et al., Journal of the American Chemical Society, vol. 69, page 186, January 1947.

The LaForge et al. article discloses that the alcoholic-ketonic components of the natural pyrethrins have been shown to consist of pyrethrolone and cinerolone which are cyclopentenolones probably having the structure

wherein R is the 2,4 pentadienyl radical ($-CH_2-CH=CH-CH=CH_2$), and the 2-butenyl radical ($-CH_2-CH=CH-CH_3$), respectively. These keto-alcohol components are made through scission, i. e., breaking down, of the natural pyrethrins which are esters of the said keto-alcohol components. Hence, as the examiner pointed out, the old compounds pyrethrolone and cinerolone are not actually "natural" compounds, but they have been consistently identified as such by the examiner, the board, and appellants, apparently for convenience.

All of the appealed claims have been rejected by the examiner as unpatentable over the LaForge et al. reference. The examiner also rejected claims 17, 46, and 47 as indefinite, and claim 48 was rejected as setting up an improper Markush group. The board affirmed all of these rejections for substantially the same reasons advanced by the examiner.

In rejecting claim 17 as indefinite, the examiner stated:

"It is seen that 'R' in the structural formula of this claim is defined as 'an alkenyl radical other than 2-butenyl and 2, 4-pentadienyl.' The latter expression is of negative nature and is considered to render the claim indefi-

nite. The claim does not point out which of all the many possible 'alkenyl' radicals are of any special advantage and constitute the invention. To the contrary, this is an improper attempt to claim all compounds except those of the prior art. In re Langdon, 77 F.2d 920, 22 C.C.P.A., Patents, 1245; In re Rose, 182 F.2d 198, 37 C.C.P.A., Patents, 1034."

Claim 47 was rejected as indefinite similarly to claim 17.

Appellants concede here, as they did before the Patent Office tribunals, that the LaForge et al. article discloses two cyclopentenolone compounds of the type recited in claim 17 in which R is 2-butenyl and 2, 4-pentadienyl, respectively. Appellants strongly contend, however, that a claim such as claim 17 is permissible in the circumstances of this case because there are critically novel and inventive patentable differences between the prior art and appellants' claimed cyclopentenolones.

A large number of points are presented by appellants to support this contention. Those points will subsequently be discussed in considering appealed claim 48.

Even if there is a critically novel and inventive patentable difference between the prior art and their invention here claimed, as appellants contend, we think this contention is not actually in point insofar as the rejection of claim 17 as indefinite is concerned.

Under R.S. § 4888, it was required that the inventor "shall *particularly point out and distinctly claim* the part, improvement, or combination which he claims as his invention or discovery." This provision has been carried forward into § 112, Title 35, U.S.C. (1952) with slight modification of language.[1]

In the light of the prior art of record, the italicised portion of claim 17 is an attempt by appellants to claim their invention by excluding what they did not invent rather than by particularly and distinctly pointing out what they did invent. Fur-

---

[1] "The specification shall conclude with one or more claims *particularly pointing out and distinctly claiming* the subject matter which the applicant regards as his invention."

ther, it is clear that claim 17 is a broad generic claim in which appellants are seeking to establish a monopoly to *all* such cyclopentenolones, whether known or unknown, excepting the two prior art compounds which are recited in the italicised exclusionary clause of claim 17.

■ In view of this, we think the examiner properly regarded the italicised portion of claim 17 as a negative limitation. We are also of the opinion that this renders the claim indefinite and unpatentable. In re Rose, supra. See also In re Langdon, supra. As this court pointed out in the Rose case, the basic objection to use of expressions of this kind is that there is a failure to comply with the statutory requirement that the applicant shall in his claims particularly point out and distinctly claim his invention when all he does is claim everything, whether known or unknown, except that which is shown in the prior art.

To support their above-noted contention that they have disclosed subject matter which is patentably inventive over the prior art, appellants have argued that there is a high degree of unpredictability in the insecticide art. Appellants have stated in the record herein that there are many instances when isomers and analogues of excellant known insecticides have proven ineffective as insecticides. This being the case, it seems particularly clear that appellants have not complied with the statute by claiming all but what was previously known.

The examiner rejected claim 47 as indefinite similarly to claim 17. This claim excludes those cyclopentenolones wherein the alkenyl radical has four or five carbon atoms while including all others. The 2-butenyl radical and the 2, 4-pentadienyl radical disclosed in LaForge et al. art alkenyl radicals having four and five carbon atoms, respectively. Thus, in claim 47, as in claim 17, appellants seek to claim all such compounds, whether known or unknown, excepting those which are shown in the prior art.

Although the italicised portion of claim 47 is affirmative in form, it is clearly a negative limitation in substance. In deter-

mining whether part of a claim is a negative limitation of the type which renders a claim fatally indefinite, we must look to the substance and not the mere form of the language in which the claim is cast. A limitation though affirmative in form may be negative in substance, and vice versa. The essential question is whether the claim meets the requirements of the pertinent provisions of R.S. § 4888 and 35 U.S.C. § 112 (1952), supra. We therefore think that the principles applied to claim 17 are applicable to claim 47 and we are of the opinion that claim 47 is indefinite and unpatentable.

Claim 46 calls for a racemic mixture of the compounds defined in claim 17. The examiner held claim 46 indefinite for the same reasons as claim 17, stating that "the natural compounds referred to in LaForge et al. article exist as a racemic mixture." The examiner also stated:

"* * * It should be noted that the compounds of claim 17 and of LaForge et al. art by mere inspection of their structural formulas capable of rotating light since they contain an asymmetric carbon atom (see Gilman, 'Organic Chemistry' (1938), Vol. 1, pages 155–176; or Fieser and Fieser, 'Organic Chemistry' (1944), pages 244–279). The skilled chemist would know, therefore, that the compounds involved here are capable of existing in dextro and levo forms and as racemic mixtures thereof."

■ These statements made by the examiner indicated he was of the opinion that the term racemic does not define anything inventively and patentably novel over the teaching of the LaForge et al. reference. The board in its decision has implicitly concurred in this holding. Concurrent findings of lack of inventive novelty by the Patent Office tribunals are not conclusive upon this court, but they are persuasive since those tribunals presumably are familiar with the art. In re Kaufmann, 193 F.2d 331, 39 C.C. P.A., Patents, 769. Appellants have presented little to convince us that this holding by the examiner and the board is erroneous. Thus, it seems to us that claim 46 must stand or fall with parent claim

17, and we therefore consider claim 46 indefinite and unpatentable for the reasons applied to claim 17.

In view of the foregoing, the rejection of claims 17, 46 and 47 as indefinite will be sustained. Having reached this conclusion, it is unnecessary to discuss the rejection of these claims as unpatentable over the LaForge et al. reference.

Claim 48 was rejected as an improper Markush claim, the examiner stating that:

"* * * This claim sets up a Markush group which illogically excludes the natural member of this group[2] which is disclosed by LaForge et al. That this is an improper Markush group, and therefore indefinite and alternative is indicated by In re Hass et al., 563 O.G. 576, 1944 C.D. 234, 141 F.2d 122, 31 C.C.P.A., Patents, 895."

Claim 48 was also rejected on prior art. That rejection will be discussed in detail later in this opinion.

Appellants agree that claim 48 excludes the moieties derived from the natural pyrethrin esters. As they point out in their brief, the moiety with a 2-(4-pentadienyl) radical at R is excluded, since it is not recited in the Markush group. That with 2-butenyl at R, which corresponds to the natural cinerolone, is also excluded. This is so because of the expression "the semicarbazone of which has a melting point with decomposition at about 222–223° C." This melting point limitation excludes not only the optically active form but also the racemic form of natural cinerolone. This melting point limitation also limits the Markush species of the claim to the geometric isomer of the naturally derived moiety, since the semicarbazone of the racemic form of the natural moiety has a different melting point.

If on examination of a generic Markush type claim, it be found that the applicant has included one or more members known to be old in the art for the same purpose as in the applicant's invention, the group in its entirety must fail of recognition in exactly the same manner as would have been the case had the group of elements of the claim been identified by a single term. In such contingency, a formula of lesser scope may be invoked, provided that the remaining members of the group have a common quality which is distinctive from the characteristics of the major group, and which itself imparts patentable merit to the subgroup over the generic group. In re Hass et al., supra.[3]

A Markush grouping is proper where the substances grouped have a community of chemical and physical characteristics which justify their inclusion in a common group, and such inclusion is not repugnant to the principles of scientific classification. In re Jones, 162 F.2d 479, 34 C.C.P.A., Patents, 1150.

Claim 48 lists a series of new synthetic substituted cyclopentenolones disclosed in appellants' application which are produced by cyclyzing the hydroxydiketones covered in allowed claims of U. S. patent No. 2,574,500, supra. All of these listed cyclopentenolones may be esterified by chrysanthemum monocarboxylic acid to yield active synthetic pyrethrinlike insecticides of the type covered in allowed claims of U. S. patent No. 2,603,652, supra. On the other hand, however, the two prior art cyclopentenolones disclosed by LaForge et al. are scission products of the natural pyrethrin esters. Hence, although these scissions products may be esterified with chrysanthemum monocarboxylic acid, such esterification merely results in the original starting ester from which they were made. Manifestly, from a practical viewpoint, if one is seeking a method of synthesizing pyrethrinlike products, to follow such a course is to wend a useless circle. Thus, the prior art scission product cyclopentenolones can in no way serve as a tool in the

---

2. The compound apparently referred to here is the "natural" scission product cinerolone, 2(2-butenyl)-4-hydroxy-3-methyl-2-cyclopenten-1-one, which is disclosed in that reference.

3. Quoting with approval from Ex parte Burke, 1934 C.D. 5.

190

preparation of synthetic pyrethrinlike insecticides.

In the light of these factors, and in view of other factors discussed below in considering patentability of the compounds recited therein, we think the Markush grouping of claim 48 complies with the requirements of In re Jones, supra.

Further, appellants' new synthesized cyclopentenolone intermediates are affirmatively recited in the claim and the exclusion of the known prior compounds results merely from claiming a subgroup of lesser scope having a common quality which is distinctive from the characteristics of the major group. This common distinctive quality is that the compounds recited are novel synthesized intermediates produced by a novel process from a novel synthesized starting material for use in a novel method of providing by synthesis the novel desired pyrethrinlike insecticides. We therefore think claim 48 presents a subgroup meeting the first of the two requirements for such subgroups as set out in In re Hass, supra. In the peculiar facts of this case, we think the recitation of the italicised compound in specific form, whereas the others are recited in broad form so as to include dextro and levo isomers and racemic mixtures, does not, *ipso facto*, make the claim an improper Markush claim. Whether a Markush grouping is proper must be decided in view of the facts in each case. In re Jones, supra.

Accordingly, the rejection of claim 48 as an improper Markush claim will not be sustained.

The subgroup, however, must have patentable merit over the major group. If any one or more of the compounds included in Markush claim 48 is not inventive and patentable over the LaForge et al. disclosure, that claim is unpatentable. In re Hass and Ex parte Burke, supra.

Claim 48 (and claim 20) was further rejected by the Patent Office tribunals as unpatentable over LaForge et al. The rejection is based primarily on the ground that the italicised portion of claim 48

(which is the same as claim 20) is drawn to an isomer of the known cinerolone scission product, 21-1(2-butenyl)-4-hydroxy-3-methyl-2-cyclopenten-1-one, and that such isomer is not inventive and patentable over the compound of the reference.

It appears from the record, that synthetic 2-(2-butenyl)-4-hydroxy-3-methyl-2-cyclopenten-1-one recited in claims 20 and 48 is not the same compound as the natural product or any racemized form derivable from natural cinerolone. The natural cinerolone scission product is now known to have a *cis* double bond linkage, whereas the new synthesized product defined in these claims has a *trans* double bond. Thus, the latter is a geometrical isomer of the former.

This court has previously held that a novel useful chemical compound which is homologous[4] or isomeric[5] with compounds of the prior art is unpatentable unless it possesses some unobvious or unexpected beneficial property not possessed by the prior art compounds. We also implicitly indicated in the decisions here cited that homologs and isomers may be patentable if they are inventive over known prior art compounds. See also Parker v. Marzall, 92 F.Supp. 736, a decision of the District Court for the District of Columbia.

The examiner and the board nowhere asserted that the compounds affirmatively claimed were available before appellants devised the synthesis they have disclosed in their application. Nor have those tribunals challenged appellants' claim that the compounds synthesized by them have made it possible to synthesize for the first time highly successful pyrethrinlike insecticides.

The sole reference LaForge et al. does not disclose or even suggest any process for synthesizing even the cyclopentenolone scission products disclosed therein, let alone the new cyclopentenolones disclosed herein. The preparation of the cyclopentenolones here claimed required the discovery and development of a complex process of synthesis, and a new class of patentable hydroxydiketones for starting materials.

4. In re Hass, supra.

5. In re Norris, 179 F.2d 970, 37 C.C.P.A., Patents, 876.

Moreover, it appears from the record that the cyclopentenolones of claim 48 when esterified yield improved synthetic pyrethrin analogs having commercial advantages over the natural pyrethrin insecticides; and that the synthetic pyrethrin esters developed by appellants have already formed the basis for extensive commercial production and use.

There is also in the record a publication from the Journal of the Chemical Society of London indicating that a research team of competent chemists sought to synthesize cyclopentenolones of the type claimed and failed to do so.

We are convinced after a review of the record herein that, as appellants contend, there is a considerable degree of unpredictability in the insecticide field with homologs, isomers and analogs of known effective insecticides having proven ineffective as insecticides. In view of this, and the other factors previously discussed, we conclude that all the compounds of the subgroup in Markush claim 48 are inventive and patentable over the prior art of record, albeit they include isomers and homologs of the compounds shown in LaForge et al. Considering the history of the ar at the time of the invention, the occasion for the invention, and its success, we think such a conclusion unavoidable. See In re McKenna, 40 C.C.P.A., Patents, —, 203 F.2d 717; In re Bowden, 183 F.2d 115, 37 C.C.P.A., Patents, 1201.

We note that the examiner allowed in claim 18 the allyl species of cyclopentenolone, which is 2-allyl-4-hydroxy-3-methyl-2-cyclopenten-1-one, the first compound recited in claim 48. It appears to us that this species is a homolog of the cinerolone moiety shown in LaForge et al. In the former, R in the 2 position is the radical $C_3H_5$ having a double bond; in the latter, it is the 2-butenyl radical $C_4H_7$ having a double bond.

Allowability of an appealed claim is not controlled by the fact that similar claims have been allowed in the Patent Office, since an appealed claim must be patentable in its own right in the opinion of this court. However, similar claims allowed by the Patent Office tribunals furnish evidence of what features those tribunals regard as patentable, and we think it proper, and sometimes necessary, to consider allowed claims in order to fully determine the views of the board and the examiner. In re Bisley, 197 F.2d 355, 39 C.C.P.A., Patents, 982 and cases cited therein.

We think the examiner's allowance of the specific compound of claim 18 indicates recognition of the presence of invention therein, notwithstanding the disclosure of a homolog in the prior art. We think the Patent Office tribunals erred in not extending similar recognition of invention in the other compounds of claim 48, which are analogous to the allyl species allowed in claim 18.

In view of the foregoing, the rejection of claim 48 will not be sustained.

Accordingly, the rejection of claim 48 is hereby reversed and the rejection of claims 17, 46 and 47 is affirmed.

Modified.