50 CCPA

**Application of Jean DRUEY and Paul Schmidt.**

**Patent Appeal No. 6895.**

United States Court of Customs and Patent Appeals

June 20, 1963.

Rehearing Denied Sept. 27, 1963.

238

Joseph G. Kolodny, Baltimore, Md., and Harry Goldsmith, Summit, N. J. (A. Ponack, Wenderoth, Lind & Ponack, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

Appellants seek reversal of the decision of the Board of Appeals which affirmed the examiner's rejection of one claim in appellants' application [1] entitled "New Amino-Benzene Sulfonamide," as unpatentable over the prior art. Six claims directed to the method of producing the compound, defined by the rejected claim, were allowed.

The remaining claim reads:

"11. A member selected from the group consisting of 3-amino-2-phenyl-pyrazole and acid addition salts thereof."

The invention, which is used as an intermediate in the preparation of a sulfa drug, has the following structural formula:

$$\text{H}_2\text{N}-\underset{\underset{C_6H_5}{|}}{\overset{}{\boxed{\phantom{xx}}}}\text{N} \qquad (I)$$

According to undisputed facts, applicants first disclosed the claimed intermediate in a parent application [2] in which they also claimed the sulfa drug. As a result of a restriction requirement by the examiner, the instant continuation-in-part application was filed. The sole use disclosed in the specification for the claimed compound is as an intermediate for the preparation of the now patented sulfa drug, 3-(p-aminobenzene sulfonamido)-2-phenyl-pyrazole having the structural formula:

$$(II)$$

---

1. Serial No. 702,540, filed December 13, 1957.

2. Serial No. 656,503, filed May 2, 1957, which has matured into U.S. Patent No. 2,858,309, issued on October 28, 1958, in which only the sulfa drug is claimed.

No other use for said compound is disclosed in the record.

The reference relied on is:

French Patent 872,801 February 23, 1942.

It is not disputed that the French patent discloses the compound

$$H_2N-\text{(pyrazole ring)}-CH_3, \; N, \; N-C_6H_5 \quad (III)$$

and teaches that compound III can be used to prepare the sulfa drug represented by the formula:

$$H_2N-\text{(benzene ring)}-SO_2-NH-\text{(pyrazole ring)}-CH_3, \; N, \; N-C_6H_5 \quad (IV)$$

For convenience we shall identify the compounds by roman numerals.

The examiner rejected the claimed compound I on compound compound III of the French patent, considering them to be adjacent homologues, stating:

"Ordinarily a homologue is unpatentable over the old compound in the absence of a showing of unexpected properties in the use disclosed * * *."

During the prosecution of the parent application, sulfa drug II was rejected over sulfa drug IV of the French patent; however, the examiner withdrew that rejection after applicants presented the affidavit of one Dr. Neipp. Consequently, compound II was patented. In an effort to show the unexpected properties of the instantly claimed compound I, applicants submitted the *same* affidavit which they had used in the parent case. That affidavit shows that applicants' sulfa drug, compound II, made from claimed compound I, had a higher and longer lasting chemotherapeutic effect, as well as a much stronger activity against streptococcal sepsis, than the sulfa drug of the French patent, compound IV, which had been made from reference compound III.

The examiner, in commenting on the affidavit, stated:

"The subject matter of the affidavit concerning the sulfa drug is considered too remote to bear upon the patentability or the properties of the intermediate. The affidavit does not concern itself with the subject matter 'sought to be patented'. This is emphasized by the use of the same affidavit to argue the patentability of two different classes of subject matter."

The board, agreeing with the examiner, held, that despite the asserted superiority of appellants' sulfa compound II over the sulfa compound IV of the French patent, the former is not "the subject matter sought to be patented"[3]

3. 35 U.S.C. § 103 states in part:
"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * *" (Emphasis supplied).

in the present case. Continuing, it stated:

"* * * to whatever extent the asserted superiority may be the basis for patentability, appellants' contribution has been recognized by the granting of Patent No. 2,858,-309. The compound before us, however, must shine in its own light, not in the reflected glory of another compound."

The board found appellants' argument that the claimed compound I and reference compound III are not homologues to be inconsistent with statements made during the prosecution of both appellants' parent case, as well as in the instant case.[4] The board stated it was clear that the claimed compound I is the next *adjacent homologue* of compound III disclosed by the French patent, within the scope of that term as allegedly defined by decisions of this court, and concluded:

"In any event, and this is the most important aspect to this matter, we are fully satisfied that the claimed compound would be obvious to a person of ordinary skill in this art from knowledge of the compound of the French patent. * * *"

■ We need not decide here whether the compounds in question are properly labeled homologues. It appears to us from the authorities cited by the solicitor and appellants that the term homologue is used by chemists at times in a broad sense, and at other times in a more narrow or strict sense. The name used to designate the relationship between related compound is not necessarily controlling; it is the closeness of that relationship which is indicative of the ob-

viousness or unobviousness of the new compound. In re Herr, 304 F.2d 906, 50 CCPA ——. Here the difference is merely the omission of a methyl group from the pyrazole ring. It seems to be well known that a simple pyrazole ring[5] contains no substituents at all. We think those considerations constitute strong evidence that omission of the methyl group from the ring is an obvious variation of the reference compound, thereby establishing a prima facie case of unpatentability of claimed compound I over reference compound III. Hence, if appellants are to prevail, they must overcome the weight of that evidence. Thus, the issue here is whether the affidavit is sufficient to do so or whether the showing therein is too remote.

■ It is appellants' position that since the only use disclosed for their compound I is as an intermediate for direct production of sulfa compound II, the "best evidence" which may be submitted under the circumstances of this case is a showing of the unexpected property of the sulfa compound II, as compared to one made from the reference compound III. They contend further that this so-called "best evidence" rule has been embraced by the board in previous decisions, such as Ex parte Parker, 102 USPQ 367, and reaffirmed in Ex parte Brody, 122 USPQ 611, and that the rule which stems from Parker v. Marzall, D.C., 92 F. Supp. 736, was cited by this court with approval in In re Schechter, 205 F.2d 185, 30 CCPA 1009. However, the solicitor argues, and we agree, that In re Finley, 174 F.2d 130, 36 CCPA 998, is more in point, and that the standard set forth there requires the verified showing to "relate to the utility of the compound actually being claimed instead of

4. In the prosecution of the instant case, appellants state in their letter of August 29, 1958:
"* * * While the patent may be said to disclose 'adjacent homologs' of the claimed compounds, attention is directed to the fact that the sulfonamides formed from the instantly claimed intermediates have been shown to be far superior to sulfonamides formed using the 'homo-

logous' methylated pyrazoles of the reference. * * *"

5. Standard texts on organic chemistry show pyrazole to be

some derivative thereof," and that "if the claimed compound itself is not tested to show superior properties, an explanation as to why it is necessary to test a derivative should be made of record." Appellants have not complied with those requirements.

■ Appellants have made no showing that the claimed intermediate has any unexpected properties, and have given no reason why the compound itself was not tested. We find no reason why the unexpected therapeutic properties of the sulfa drug should necessarily relate back to the intermediate, or why such properties must necessarily be attributable to one of the reactants from which it was prepared. The record shows that the therapeutic properties here belong to the sulfa drug, not to any of the compounds used in its preparation. Appellants' affidavit, therefore, fails to establish that the claimed compound has any unobvious or unexpected property, hence fails to rebut the prima facie showing of obviousness over the prior art.

The decision is affirmed.

Affirmed.

SMITH, Judge (dissenting).

I do not agree with what seems to be the underlying concept of the majority opinion. The statement is made in the opinion that "Appellants have made no showing that the claimed intermediate has any unexpected properties * * *." The majority disposes of the Neipp affidavit since it shows the results of tests of a sulfa drug made from the compound claimed in rejected claim 11 when compared with a sulfa drug made from the compound of the French reference patent.

The majority states:

" * * * We find no reason why the unexpected therapeutic properties of the sulfa drug should necessarily relate back to the intermediate, or why such properties must necessarily be attributable to one of the reactants from which it was pre-

pared. The record shows that the therapeutic properties here belong to the sulfa drug, not to any of the compounds used in its preparation. * * * "

The examiner's answer in reference to the compound of appealed claim 11 states that "The compound's only use is as an intermediate for preparation of sulfa drugs." This being true, it seems to me appellants had no choice but to test the claimed compound in its "only use", i. e., in terms of the sulfa drug prepared therefrom. In my opinion, the Neipp affidavit clearly establishes a result which seems clearly to be an unobvious and unexpected result.

As we stated in In re Papesch, 315 F. 2d 381, 50 CCPA 1084:

"From the standpoint of patent law, a compound and all of its properties are inseparable; they are one and the same thing. The graphic formulae, the chemical nomenclature, the systems of classification and study such as the concepts of homology, isomerism, etc., are mere symbols by which compounds can be identified, classified, and compared. But a formula is not a compound and while it may serve in a claim to *identify* what is being patented, as the metes and bounds of a deed identify a plot of land, the *thing* that is patented is not the formula but the compound identified by it. And the patentability of the thing does not depend on the similarity of its formula to that of another compound but of the similarity of the former compound to the latter. There is no basis in law for ignoring any property in making such a comparison. An assumed similarity based on a comparison of formulae must give way to evidence that the assumption is erroneous."

No useful purpose is here served by reviewing what I think are the pertinent cases so thoroughly treated by Judge Rich in the Papesch opinion. Of these cases Parker v. Marzall, D.C., 92 F.Supp.

736, seems to me to be very pertinent as applied to the present facts. There evidence of an unobvious advantage was found in the yellow azo dyes made from the claimed intermediates. Despite the fact, as stated by the board, that the decision was rendered "before the enactment of the statutory standard set forth in 35 U.S.C. 103", it seems to me to express a proper and workable view as to the evidence admissable for showing unexpected properties in a chemical compound.

In my opinion, the best evidence of the properties of the compound claimed here is to be found by testing the product made by that compound. I can conceive of no more convincing proof of unexpected and unobvious properties of the claimed intermediate than to show those unexpected and unobvious properties of the sulfa drug made therefrom.

I would therefore reverse the decision of the board.